(Slip Opinion)          OCTOBER  TERM,  2008          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CORLEY *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 07–10441.   Argued January 21, 2009—Decided April 6, 2009

*McNabb* v. *United States*, 318 U. S. 332, and *Mallory* v. *United States*, 354 U. S. 449, "generally rende[r] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of [Federal Rule of Criminal Procedure] 5(a)." *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 354. Rule 5(a), in turn, provides that a "person making an arrest . . . must take the defendant without unnecessary delay before a magistrate judge . . . ." Congress enacted 18 U. S. C. §3501 in response to *Miranda* v. *Arizona*, 384 U. S. 436, and some applications of the *McNabb-Mallory* rule. In an attempt to eliminate *Miranda*, §3501(a) provides that "a confession . . . shall be admissible in evidence if it is voluntarily given," and §3501(b) lists several considerations for courts to address in assessing voluntariness. Subsection (c), which focuses on *McNabb-Mallory*, provides that "a confession made . . . by . . . a defendant . . . , while . . . under arrest . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and . . . within six hours [of arrest]"; it extends that time limit when further delay is "reasonable considering the means of transportation and the distance to . . . the nearest available [magistrate]."

Petitioner Corley was arrested for assaulting a federal officer at about 8 a.m. Around 11:45 FBI agents took him to a Philadelphia hospital to treat a minor injury. At 3:30 p.m. he was taken from the hospital to the local FBI office and told that he was a suspect in a bank robbery. Though the office was in the same building as the nearest magistrate judges, the agents did not bring him before a magistrate judge, but questioned him, hoping for a confession. At 5:27 p.m., some 9.5 hours after his arrest, Corley began an oral con-

fession that he robbed the bank.  He asked for a break at 6:30 and
was held overnight.  The interrogation resumed the next morning,
ending with his signed written confession.  He was finally presented
to a Magistrate Judge at 1:30 p.m., 29.5 hours after his arrest, and
charged with armed bank robbery and related charges.  The District
Court denied his motion to suppress his confessions under Rule 5(a)
and *McNabb-Mallory.*  It reasoned that the oral confession occurred
within §3501(c)'s six-hour window because the time of Corley's medi-
cal treatment should be excluded from the delay.  It also found the
written confession admissible, explaining there was no unreasonable
delay under Rule 5(a) because Corley had requested the break.  He
was convicted of conspiracy and bank robbery.  The Third Circuit af-
firmed.  Relying on Circuit precedent to the effect that §3501 abro-
gated *McNabb-Mallory* and replaced it with a pure voluntariness
test, it concluded that if a district court found a confession voluntary
after considering the points listed in §3501(b), it would be admissible,
even if the presentment delay was unreasonable.

*Held:* Section 3501 modified *McNabb-Mallory* but did not supplant it.
Pp. 8–18.

   (a) The Government claims that because §3501(a) makes a confes-
sion "admissible" "if it is voluntarily given," it entirely eliminates
*McNabb-Mallory* with its bar to admitting even a voluntary confes-
sion if given during an unreasonable presentment delay.  Corley ar-
gues that §3501(a) was only meant to overrule *Miranda,* and notes
that only §3501(c) touches on *McNabb-Mallory,* making the rule in-
applicable to confessions given within six hours of an arrest.  He has
the better argument.  Pp. 8–16.

      (1) The Government's reading renders §3501(c) nonsensical and
superfluous.  If subsection (a) really meant that any voluntary con-
fession was admissible, then subsection (c) would add nothing; if a
confession was "made voluntarily" it would be admissible, period, and
never "inadmissible solely because of delay," even a delay beyond six
hours.  The Government's reading is thus at odds with the basic in-
terpretive canon that " '[a] statute should be construed [to give effect]
to all its provisions, so that no part will be inoperative or superfluous,
void or insignificant.' "  *Hibbs* v. *Winn*, 542 U. S. 88, 101.  The Gov-
ernment claims that in providing that a confession "shall not be ad-
missible," Congress meant that a confession "shall not be [involun-
tary]."  Thus read, (c) would specify a bright-line rule applying (a) to
cases of delay: it would tell courts that delay alone does not make a
confession involuntary unless the delay exceeds six hours.  But
" 'Congress did not write the statute that way.' "  *Russello* v. *United
States*, 464 U. S. 16, 23.  The terms "inadmissible" and "involuntary"
are not synonymous.  Congress used both in (c), and this Court

Syllabus

"would not presume to ascribe this difference to a simple mistake in draftsmanship." *Ibid.* There is also every reason to believe that Congress used the distinct terms deliberately, specifying two criteria that must be satisfied to prevent a confession from being "inadmissible solely because of delay": the confession must be "[1] made voluntarily and . . . [2] within six hours [of arrest]." Moreover, under the *McNabb-Mallory* rule, "inadmissible" and "involuntary" mean different things. Corley's position, in contrast, gives effect to both (c) and (a), by reading (a) as overruling *Miranda* and (c) as qualifying *McNabb-Mallory*. The Government's counterargument—that Corley's reading would also create a conflict, since (a) makes all voluntary confessions admissible while (c) would leave some voluntary confessions inadmissible—falls short. First, (a) is a broad directive while (c) aims only at *McNabb-Mallory*, and "a more specific statute [is] given precedence over a more general one." *Busic* v. *United States*, 446 U. S. 398, 406. Second, reading (a) to create a conflict with (c) not only would make (c) superfluous, but would also create conflicts with so many other Rules of Evidence that the subsection cannot possibly be given its literal scope. Pp. 8–12.

(2) The legislative history strongly favors Corley's reading. The Government points to nothing in this history supporting its contrary view. Pp. 13–15.

(3) The Government's position would leave the Rule 5 presentment requirement without teeth, for if there is no *McNabb-Mallory* there is no apparent remedy for a presentment delay. The prompt presentment requirement is not just an administrative nicety. It dates back to the common law. Under Rule 5, presentment is the point at which the judge must take several key steps to foreclose Government overreaching: *e.g.,* informing the defendant of the charges against him and giving the defendant a chance to consult with counsel. Without *McNabb-Mallory*, federal agents would be free to question suspects for extended periods before bringing them out in the open, even though "custodial police interrogation, by its very nature, isolates and pressures the individual," *Dickerson* v. *United States*, 530 U. S. 428, 435, inducing people to confess to crimes they never committed. Pp. 15–16.

(b) There is no merit to the Government's fallback claim that even if §3501 preserved a limited version of *McNabb-Mallory*, Congress cut it out by enacting Federal Rule of Evidence 402, which provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court . . . ." The Advisory Committee's Notes expressly identified *McNabb-Mallory* as a statutorily authorized rule that would survive Rule 402, and the

Syllabus

Government has previously conceded before this Court that Rule 402 preserved *McNabb-Mallory*. Pp. 16–18.

500 F. 3d 210, vacated and remanded.

SOUTER, J., delivered the opinion of the Court, in which STEVENS, KENNEDY, GINSBURG, and BREYER, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and SCALIA and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–10441

JOHNNIE CORLEY, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[April 6, 2009]

JUSTICE SOUTER delivered the opinion of the Court.

The question here is whether Congress intended 18 U. S. C. §3501 to discard, or merely to narrow, the rule in *McNabb* v. *United States*, 318 U. S. 332 (1943), and *Mallory* v. *United States*, 354 U. S. 449 (1957), under which an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge. We hold that Congress meant to limit, not eliminate, *McNabb-Mallory*.

I

A

The common law obliged an arresting officer to bring his prisoner before a magistrate as soon as he reasonably could. See *County of Riverside* v. *McLaughlin*, 500 U. S. 44, 61–62 (1991) (SCALIA, J., dissenting). This "presentment" requirement tended to prevent secret detention and served to inform a suspect of the charges against him, and it was the law in nearly every American State and the National Government. See *id.*, at 60–61; *McNabb*, *supra*, at 342, and n. 7.

*McNabb* v. *United States* raised the question of how to

enforce a number of federal statutes codifying the presentment rule. 318 U. S., at 342 (citing, among others, 18 U. S. C. §595 (1940 ed.), which provided that "'[i]t shall be the duty of the marshal . . . who may arrest a person . . . to take the defendant before the nearest . . . judicial officer . . . for a hearing'"). There, federal agents flouted the requirement by interrogating several murder suspects for days before bringing them before a magistrate, and then only after they had given the confessions that convicted them. 318 U. S., at 334–338, 344–345.

On the defendants' motions to exclude the confessions from evidence, we saw no need to reach any constitutional issue. Instead we invoked the supervisory power to establish and maintain "civilized standards of procedure and evidence" in federal courts, *id.*, at 340, which we exercised for the sake of making good on the traditional obligation embodied in the federal presentment legislation. We saw both the statutes and the traditional rule as aimed not only at checking the likelihood of resort to the third degree but meant generally to "avoid all the evil implications of secret interrogation of persons accused of crime." *Id.*, at 344. We acknowledged that "Congress ha[d] not explicitly forbidden the use of evidence . . . procured" in derogation of the presentment obligation, *id.*, at 345, but we realized that "permit[ting] such evidence to be made the basis of a conviction in the federal courts would stultify the policy which Congress ha[d] enacted into law," *ibid.*, and in the exercise of supervisory authority we held confessions inadmissible when obtained during unreasonable presentment delay.

Shortly after *McNabb*, the combined action of the Judicial Conference of the United States and Congress produced Federal Rule of Criminal Procedure 5(a), which pulled the several statutory presentment provisions together in one place. See *Mallory*, *supra*, at 452 (describing Rule 5(a) as "a compendious restatement, without sub-

stantive change, of several prior specific federal statutory provisions"). As first enacted, the rule told "[a]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant [to] take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States." Fed. Rule Crim. Proc. 5(a) (1946). The rule remains much the same today: "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." Fed. Rule Crim. Proc. 5(a)(1)(A) (2007).

A case for applying *McNabb* and Rule 5(a) together soon arose in *Upshaw* v. *United States*, 335 U. S. 410 (1948). Despite the Government's confession of error, the D. C. Circuit had thought *McNabb*'s exclusionary rule applied only to involuntary confessions obtained by coercion during the period of delay, 335 U. S., at 411–412, and so held the defendant's voluntary confession admissible into evidence. This was error, and we reiterated the reasoning of a few years earlier. "In the *McNabb* case we held that the plain purpose of the requirement that prisoners should promptly be taken before committing magistrates was to check resort by officers to 'secret interrogation of persons accused of crime.'" *Id.*, at 412 (quoting *McNabb*, *supra*, at 344). *Upshaw* consequently emphasized that even voluntary confessions are inadmissible if given after an unreasonable delay in presentment. 335 U. S., at 413.

We applied Rule 5(a) again in *Mallory* v. *United States*, holding a confession given seven hours after arrest inadmissible for "unnecessary delay" in presenting the suspect to a magistrate, where the police questioned the suspect for hours "within the vicinity of numerous committing magistrates." 354 U. S., at 455. Again, we repeated the reasons for the rule and explained, as we had before and

have since, that delay for the purpose of interrogation is the epitome of "unnecessary delay." *Id.*, at 455–456; see also *McLaughlin*, 500 U. S., at 61 (SCALIA, J., dissenting) ("It was clear" at common law "that the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate"); *Upshaw*, *supra*, at 414. Thus, the rule known simply as *McNabb-Mallory* "generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a)." *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 354 (1994).

There the law remained until 1968, when Congress enacted 18 U. S. C. §3501 in response to *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and to the application of *McNabb-Mallory* in some federal courts. Subsections (a) and (b) of §3501 were meant to eliminate *Miranda*.[1] See *Dickerson* v. *United States*, 530 U. S. 428, 435–437 (2000); *infra*, at 13–14. Subsection (a) provides that "[i]n any criminal prosecution brought by the United States . . . , a confession . . . shall be admissible in evidence if it is voluntarily given," while subsection (b) lists several considerations for courts to address in assessing voluntariness.[2]

---

[1] We rejected this attempt to overrule *Miranda* in *Dickerson* v. *United States*, 530 U. S. 428 (2000).

[2] In full, subsections (a) and (b) provide:

"(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

Subsection (c), which focused on *McNabb-Mallory*, see *infra*, at 13–14, provides that in any federal prosecution, "a confession made . . . by . . . a defendant therein, while such person was under arrest . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily . . . and if such confession was made . . . within six hours [of arrest]"; the six-hour time limit is extended when further delay is "reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]."[3]

_____

"(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

"The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession."

[3] In full, subsection (c) provides:

"In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other

The issue in this case is whether Congress intended §3501(a) to sweep *McNabb-Mallory*'s exclusionary rule aside entirely, or merely meant §3501(c) to provide immunization to voluntary confessions given within six hours of a suspect's arrest.

B

Petitioner Johnnie Corley was suspected of robbing a bank in Norristown, Pennsylvania. After federal agents learned that Corley was subject to arrest on an unrelated local matter, some federal and state officers went together to execute the state warrant on September 17, 2003, and found him just as he was pulling out of a driveway in his car. Corley nearly ran over one officer, then jumped out of the car, pushed the officer down, and ran. The agents gave chase and caught and arrested him for assaulting a federal officer. The arrest occurred about 8 a.m. 500 F. 3d 210, 212 (CA3 2007).

FBI agents first kept Corley at a local police station while they questioned residents near the place he was captured. Around 11:45 a.m. they took him to a Philadelphia hospital to treat a minor cut on his hand that he got during the chase. At 3:30 p.m. the agents took him from the hospital to the Philadelphia FBI office and told him that he was a suspect in the Norristown bank robbery. Though the office was in the same building as the chambers of the nearest magistrate judges, the agents did not bring Corley before a magistrate, but questioned him instead, in hopes of getting a confession. App. 68–69, 83, 138–139.

---

detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer."

The agents' repeated arguments sold Corley on the benefits of cooperating with the Government, and he signed a form waiving his *Miranda* rights. At 5:27 p.m., some 9.5 hours after his arrest, Corley began an oral confession that he robbed the bank, *id.*, at 62, and spoke on in this vein until about 6:30, when agents asked him to put it all in writing. Corley said he was tired and wanted a break, so the agents decided to hold him overnight and take the written statement the next morning. At 10:30 a.m. on September 18 they began the interrogation again, which ended when Corley signed a written confession. He was finally presented to a magistrate at 1:30 p.m. that day, 29.5 hours after his arrest. 500 F. 3d, at 212.

Corley was charged with armed bank robbery, 18 U. S. C. §2113(a), (d), conspiracy to commit armed bank robbery, §371, and using a firearm in furtherance of a crime of violence, §924(c). When he moved to suppress his oral and written confessions under Rule 5(a) and *McNabb-Mallory*, the District Court denied the motion, with the explanation that the time Corley was receiving medical treatment should be excluded from the delay, and that the oral confession was thus given within the six-hour window of §3501(c). Crim. No. 03–775 (ED Pa., May 10, 2004), App. 97. The District Court also held Corley's written confession admissible, reasoning that "a break from interrogation requested by an arrestee who has already begun his confession does not constitute unreasonable delay under Rule 5(a)." *Id.*, at 97–98. Corley was convicted of conspiracy and armed robbery but acquitted of using a firearm during a crime of violence. 500 F. 3d, at 212–213.

A divided panel of the Court of Appeals for the Third Circuit affirmed the conviction, though its rationale for rejecting Corley's Rule 5(a) argument was different from the District Court's. The panel majority considered itself bound by Circuit precedent to the effect that §3501 entirely abrogated the *McNabb-Mallory* rule and replaced it

with a pure voluntariness test. See 500 F. 3d, at 212 (citing *Government of the Virgin Islands* v. *Gereau*, 502 F. 2d 914 (CA3 1974)). As the majority saw it, if a district court found a confession voluntary after considering the points listed in §3501(b), it would be admissible, regardless of whether delay in presentment was unnecessary or unreasonable. 500 F. 3d, at 217. Judge Sloviter read *Gereau* differently and dissented with an opinion that "§3501 does not displace Rule 5(a)" or abrogate *McNabb-Mallory* for presentment delays beyond six hours. 500 F. 3d, at 236.

We granted certiorari to resolve a division in the Circuit Courts on the reach of §3501. 554 U. S. ___ (2008). Compare *United States* v. *Glover*, 104 F. 3d 1570, 1583 (CA10 1997) (§3501 entirely supplanted *McNabb-Mallory*); *United States* v. *Christopher*, 956 F. 2d 536, 538–539 (CA6 1991) (same), with *United States* v. *Mansoori,* 304 F. 3d 635, 660 (CA7 2002) (§3501 limited the *McNabb-Mallory* rule to periods more than six hours after arrest); *United States* v. *Perez*, 733 F. 2d 1026, 1031–1032 (CA2 1984) (same).[4] We now vacate and remand.

## II

The Government's argument focuses on §3501(a), which provides that any confession "shall be admissible in evidence" in federal court "if it is voluntarily given." To the Government, subsection (a) means that once a district court looks to the considerations in §3501(b) and finds a confession voluntary, in it comes; (a) entirely eliminates *McNabb-Mallory* with its bar to admitting even a voluntary confession if given during an unreasonable delay in presentment.

Corley argues that §3501(a) was meant to overrule

---

[4] We granted certiorari to resolve this question once before, in *United States* v. *Alvarez-Sanchez*, 511 U. S. 350 (1994), but ultimately resolved that case on a different ground, *id.*, at 355–360.

*Miranda* and nothing more, with no effect on *McNabb-Mallory*, which §3501 touches only in subsection (c). By providing that a confession "shall not be inadmissible solely because of delay" in presentment if "made voluntarily and . . . within six hours [of arrest]," subsection (c) leaves *McNabb-Mallory* inapplicable to confessions given within the six hours, but when a confession comes even later, the exclusionary rule applies and courts have to see whether the delay was unnecessary or unreasonable.

Corley has the better argument.

## A

The fundamental problem with the Government's reading of §3501 is that it renders §3501(c) nonsensical and superfluous. Subsection (c) provides that a confession "shall not be inadmissible solely because of delay" in presentment if the confession is "made voluntarily and . . . within six hours [of arrest]." If (a) really meant that any voluntary confession was admissible, as the Government contends, then (c) would add nothing; if a confession was "made voluntarily" it would be admissible, period, and never "inadmissible solely because of delay," no matter whether the delay went beyond six hours. There is no way out of this, and the Government concedes it. Tr. of Oral Arg. 33 ("Congress never needed (c); (c) in the [G]overnment's view was always superfluous").

The Government's reading is thus at odds with one of the most basic interpretive canons, that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" *Hibbs* v. *Winn*, 542 U. S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction §46.06, pp.181–186 (rev. 6th ed. 2000)).[5] The

———————

[5] The dissent says that the antisuperfluousness canon has no place here because "there is nothing ambiguous about the language of §3501(a)." *Post*, at 2 (opinion of ALITO, J.). But this response violates

Government attempts to mitigate its problem by rewriting (c) into a clarifying, if not strictly necessary, provision: although Congress wrote that a confession "shall not be inadmissible solely because of delay" if the confession is "made voluntarily and . . . within six hours [of arrest]," the Government tells us that Congress actually meant that a confession "shall not be [involuntary] solely because of delay" if the confession is "[otherwise voluntary] and . . . [made] within six hours [of arrest]." Thus rewritten, (c) would coexist peacefully (albeit inelegantly) with (a), with (c) simply specifying a bright-line rule applying (a) to cases of delay: it would tell courts that delay alone does not make a confession involuntary unless the delay exceeds six hours.

To this proposal, "'[t]he short answer is that Congress did not write the statute that way.'" *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (quoting *United States* v. *Naftalin*, 441 U. S. 768, 773 (1979)). The Government may say that we can sensibly read "inadmissible" as "involuntary" because the words are "virtually synonymous . . . in this statutory context," Brief for United States 23, but this is simply not so. To begin with, Congress used

_____

"the cardinal rule that a statute is to be read as a whole," *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 221 (1991). Subsection 3501(a) seems clear only if one ignores the absurd results of a literal reading, *infra*, at 11–12, and only until one reads §3501(c) and recognizes that if (a) means what it literally says, (c) serves no purpose. Even the dissent concedes that when (a) and (c) are read together, "[t]here is simply no perfect solution to the problem before us." *Post*, at 4. Thus, the dissent's point that subsection (a) seems clear when read in isolation proves nothing, for "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 132 (2000). When subsection (a) is read in context, there is no avoiding the question, "What could Congress have been getting at with both (a) and (c)?" The better answer is that Congress meant to do just what Members explicitly said in the legislative record. See *infra*, at 13–15.

both terms in (c) itself, and "[w]e would not presume to ascribe this difference to a simple mistake in draftsmanship." *Russello*, *supra*, at 23. And there is, in fact, every reason to believe that Congress used the distinct terms very deliberately. Subsection (c) specifies two criteria that must be satisfied to prevent a confession from being "inadmissible solely because of delay": the confession must be "[1] made voluntarily and . . . [2] within six hours [of arrest]." Because voluntariness is thus only one of several criteria for admissibility under (c), "involuntary" and "inadmissible" plainly cannot be synonymous. What is more, the Government's argument ignores the fact that under the *McNabb-Mallory* rule, which we presume Congress was aware of, *Cannon* v. *University of Chicago*, 441 U. S. 677, 699 (1979), "inadmissible" and "involuntary" mean different things. As we explained before and as the Government concedes, *McNabb-Mallory* makes even voluntary confessions inadmissible if given after an unreasonable delay in presentment, *Upshaw*, 335 U. S., at 413; Tr. of Oral Arg. 33 ("[I]t was well understood that *McNabb-Mallory* . . . excluded totally voluntary confessions"). So we cannot accept the Government's attempt to confuse the critically distinct terms "involuntary" and "inadmissible" by rewriting (c) into a bright-line rule doing nothing more than applying (a).

Corley's position, in contrast, gives effect to both (c) and (a), by reading (a) as overruling *Miranda* and (c) as qualifying *McNabb-Mallory*. The Government answers, however, that accepting Corley's argument would result in a different problem: it would create a conflict between (c) and (a), since (a) provides that all voluntary confessions are admissible while Corley's reading of (c) leaves some voluntary confessions inadmissible. But the Government's counterargument falls short for two reasons. First, even if (a) is read to be at odds with (c), the conflict is resolved by recognizing that (a) is a broad directive while (c) aims only

at *McNabb-Mallory*, and "a more specific statute will be
given precedence over a more general one . . . ." *Busic* v.
*United States*, 446 U. S. 398, 406 (1980).  Second, and
more fundamentally, (a) cannot prudently be read to
create a conflict with (c), not only because it would make
(c) superfluous, as explained, but simply because reading
(a) that way would create conflicts with so many other
rules that the subsection cannot possibly be given its
literal scope.  Subsection (a) provides that "[i]n any crimi-
nal prosecution brought by the United States . . . , a con-
fession . . . shall be admissible in evidence if it is voluntar-
ily given," and §3501(e) defines "confession" as "any
confession of guilt of any criminal offense or any self-
incriminating statement made or given orally or in writ-
ing."  Thus, if the Government seriously urged a literal
reading, (a) would mean that "in any criminal prosecution
brought by the United States . . . , ['any self-incriminating
statement' with respect to 'any criminal offense'] . . . shall
be admissible in evidence if it is voluntarily given."  Thus
would many a Rule of Evidence be overridden in case after
case: a defendant's self-incriminating statement to his
lawyer would be admissible despite his insistence on
attorney-client privilege; a fourth-hand hearsay statement
the defendant allegedly made would come in; and a defen-
dant's confession to an entirely unrelated crime committed
years earlier would be admissible without more.  These
are some of the absurdities of literalism that show that
Congress could not have been writing in a literalistic
frame of mind.[6]

––––––––––

[6] The dissent seeks to avoid these absurd results by claiming that
"§3501(a) does not supersede ordinary evidence Rules," *post*, at 10, but
its only argument for this conclusion is that "there is no reason to
suppose that Congress meant any such thing," *post*, at 9.  The dissent is
certainly correct that there is no reason to suppose that Congress
meant any such thing; that is what our *reductio ad absurdum* shows.
But that leaves the dissent saying, "§3501(a) must be read literally"

## B

As it turns out, there is more than *reductio ad absur-dum* and the antisuperfluousness canon to confirm that subsection (a) leaves *McNabb-Mallory* alone, for that is what legislative history says. In fact, the Government concedes that subsections (a) and (b) were aimed at *Miranda*, while subsection (c) was meant to modify the presentment exclusionary rule. Tr. of Oral Arg. 38 ("I will concede to you . . . that section (a) was considered to over-rule *Miranda*, and subsection (c) was addressed to *McNabb-Mallory*"). The concession is unavoidable. The Senate, where §3501 originated, split the provision into two parts: Division 1 contained subsections (a) and (b), and Division 2 contained subsection (c). 114 Cong. Rec. 14171 (1968). In the debate on the Senate floor immedi-ately before voting on these proposals, several Senators, including the section's prime sponsor, Senator McClellan, explained that Division 1 "has to do with the *Miranda* decision," while Division 2 related to *Mallory*. 114 Cong. Rec. 14171–14172. This distinct intent was confirmed by the separate Senate votes adopting the two measures, Division 1 by 55 to 29 and Division 2 by 58 to 26, *id.*, at 14171–14172, 14174–14175; if (a) did abrogate *McNabb-Mallory*, as the Government claims, then voting for Divi-sion 2 would have been entirely superfluous, for the Divi-sion 1 vote would already have done the job. That aside, a sponsor's statement to the full Senate carries considerable weight, and Senator McClellan's explanation that Division 1 was specifically addressed to *Miranda* confirms that (a) and (b) were never meant to reach far enough to abrogate

———————

(rendering §3501(c) superfluous), "but not too literally" (so that it would override other Rules of Evidence). The dissent cannot have it both ways. If it means to profess literalism it will have to take the absurdity that literalism brings with it; "*credo quia absurdum*" (as Tertullian may have said). If it will not take the absurd, then its literalism is no alternative to our reading of the statute.

other background evidentiary rules including *McNabb-Mallory*.

Further legislative history not only drives that point home, but conclusively shows an intent that subsection (c) limit *McNabb-Mallory*, not replace it. In its original draft, subsection (c) would indeed have done away with *McNabb-Mallory* completely, for the bill as first written would have provided that "[i]n any criminal prosecution by the United States . . . , a confession made or given by a person who is a defendant therein . . . shall not be inadmissible solely because of delay in bringing such person before a [magistrate] if such confession is . . . made voluntarily." S. 917, 90th Cong., 2d Sess., 44–45 (1968) (as reported by Senate Committee on the Judiciary); 114 Cong. Rec. 14172. The provision so conceived was resisted, however, by a number of Senators worried about allowing indefinite presentment delays. See, *e.g.*, *id.*, at 11740, 13990 (Sen. Tydings) (the provision would "permit Federal criminal suspects to be questioned indefinitely before they are presented to a committing magistrate"); *id.*, at 12290 (Sen. Fong) (the provision "would open the doors to such practices as holding suspects incommunicado for an indefinite period"). After Senator Tydings proposed striking (c) from the bill altogether, *id.*, at 13651 (Amendment No. 788), Senator Scott introduced the compromise of qualifying (c) with the words: "'and if such confession was made or given by such person within six hours following his arrest or other detention.'" *Id.*, at 14184–14185 (Amendment No. 805).[7] The amendment was intended to confine *McNabb-Mallory* to excluding only confessions given after more than six hours of delay, see 114 Cong. Rec. 14184 (remarks of Sen. Scott) ("My amendment provides that the period during

---

[7] The proviso at the end of (c) relating to reasonable delays caused by the means of transportation and distance to be traveled came later by separate amendment. 114 Cong. Rec. 14787.

which confessions may be received . . . shall in no case exceed 6 hours"), and it was explicitly modeled on the provision Congress had passed just months earlier to govern presentment practice in the District of Columbia, Title III of An Act Relating to Crime and Criminal Procedure in the District of Columbia (D. C. Crime Act), §301(b), 81 Stat. 735–736, see, *e.g.*, 114 Cong. Rec. 14184 (remarks of Sen. Scott) ("My amendment is an attempt to conform, as nearly as practicable, to Title III of [the D. C. Crime Act]"). By the terms of that Act, "[a]ny statement, admission, or confession made by an arrested person within three hours immediately following his arrest shall not be excluded from evidence in the courts of the District of Columbia solely because of delay in presentment." §301(b), 81 Stat. 735–736. Given the clear intent that Title III modify but not eliminate *McNabb-Mallory* in the District of Columbia, see, *e.g.*, S. Rep. No. 912, 90th Cong., 1st Sess., 17–18 (1967), using it as a model plainly shows how Congress meant as much but no more in §3501(c).

In sum, the legislative history strongly favors Corley's reading. The Government points to nothing in this history supporting its view that (c) created a bright-line rule for applying (a) in cases with a presentment issue.

## C

It also counts heavily against the position of the United States that it would leave the Rule 5 presentment requirement without any teeth, for as the Government again is forced to admit, if there is no *McNabb-Mallory* there is no apparent remedy for delay in presentment. Tr. of Oral Arg. 25. One might not care if the prompt presentment requirement were just some administrative nicety, but in fact the rule has always mattered in very practical ways and still does. As we said, it stretches back to the common law, when it was "one of the most important" protections "against unlawful arrest." *McLaughlin*, 500 U. S., at 60–

61 (SCALIA, J., dissenting). Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release. Fed. Rule Crim. Proc. 5(d); see also Rule 58(b)(2).

In a world without *McNabb-Mallory*, federal agents would be free to question suspects for extended periods before bringing them out in the open, and we have always known what custodial secrecy leads to. See *McNabb*, 318 U. S. 332. No one with any smattering of the history of 20th-century dictatorships needs a lecture on the subject, and we understand the need even within our own system to take care against going too far. "[C]ustodial police interrogation, by its very nature, isolates and pressures the individual," *Dickerson*, 530 U. S., at 435, and there is mounting empirical evidence that these pressures can induce a frighteningly high percentage of people to confess to crimes they never committed, see, *e.g.*, Drizin & Leo, The Problem of False Confessions in the Post-DNA World, 82 N. C. L. Rev. 891, 906–907 (2004).

Justice Frankfurter's point in *McNabb* is as fresh as ever: "The history of liberty has largely been the history of observance of procedural safeguards." 318 U. S., at 347. *McNabb-Mallory* is one of them, and neither the text nor the history of §3501 makes out a case that Congress meant to do away with it.

## III

The Government's fallback claim is that even if §3501 preserved a limited version of *McNabb-Mallory*, Congress cut out the rule altogether by enacting Federal Rule of Evidence 402 in 1975. Act of Jan. 2, Pub. L. 93–595, 88

Stat. 1926.  So far as it might matter here, that rule provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."   The Government says that *McNabb-Mallory* excludes relevant evidence in a way not "otherwise provided by" any of these four authorities, and so has fallen to the scythe.

The Government never raised this argument in the Third Circuit or the District Court, which would justify refusing to consider it here, but in any event it has no merit.   The Advisory Committee's Notes on Rule 402, which were before Congress when it enacted the Rules of Evidence and which we have relied on in the past to interpret the rules, *Tome* v. *United States*, 513 U. S. 150, 160 (1995) (plurality opinion), expressly identified *McNabb-Mallory* as a statutorily authorized rule that would survive Rule 402: "The Rules of Civil and Criminal Procedure in some instances require the exclusion of relevant evidence.   For example, . . . the effective enforcement of . . . Rule 5(a) . . . is held to require the exclusion of statements elicited during detention in violation thereof."   28 U. S. C. App., pp. 325–326 (citing *Mallory*, 354 U. S. 449, and 18 U. S. C. §3501(c)); see also *Mallory, supra,* at 451 ("Th[is] case calls for a proper application of Rule 5(a) of the Federal Rules of Criminal Procedure . . .").   Indeed, the Government has previously conceded before this Court that Rule 402 preserved *McNabb-Mallory*.   Brief for United States in *United States* v. *Payner*, O. T. 1979, No. 78–1729, p. 32, and n. 13 (1979) (saying that Rule 402 "left to the courts . . . questions concerning the propriety of excluding relevant evidence as a method of implementing the Constitution, a federal statute, or a statutorily authorized rule," and citing *McNabb-Mallory* as an example).   The Government was right the first time, and it would be

bizarre to hold that Congress adopted Rule 402 with a purpose exactly opposite to what the Advisory Committee Notes said the rule would do.

## IV

We hold that §3501 modified *McNabb-Mallory* without supplanting it. Under the rule as revised by §3501(c), a district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]"). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and . . . the weight to be given [it] is left to the jury." *Ibid.* If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

In this case, the Third Circuit did not apply this rule and in consequence never conclusively determined whether Corley's oral confession "should be treated as having been made within six hours of arrest," as the District Court held. 500 F. 3d, at 220, n. 7. Nor did the Circuit consider the justifiability of any delay beyond six hours if the oral confession should be treated as given outside the six-hour window; and it did not make this enquiry with respect to Corley's written confession. We therefore vacate the judgment of the Court of Appeals and remand the case for consideration of those issues in the first instance, consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 07–10441

## JOHNNIE CORLEY, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[April 6, 2009]

JUSTICE ALITO, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

Section 3501(a) of Title 18, United States Code, directly and unequivocally answers the question presented in this case. After petitioner was arrested by federal agents, he twice waived his *Miranda*[1] rights and voluntarily confessed, first orally and later in writing, that he had participated in an armed bank robbery. He was then taken before a Magistrate Judge for an initial appearance. The question that we must decide is whether this voluntary confession may be suppressed on the ground that there was unnecessary delay in bringing petitioner before the Magistrate Judge. Unless the unambiguous language of §3501(a) is ignored, petitioner's confession may not be suppressed.

I

Section 3501(a) states: "In any criminal prosecution brought by the United States . . ., a confession . . . shall be admissible in evidence if it is voluntarily given."

Applying "settled principles of statutory construction," "we must first determine whether the statutory text is plain and unambiguous," and "[i]f it is, we must apply the

———————
[1] See *Miranda* v. *Arizona*, 384 U. S. 436 (1966).

statute according to its terms." *Carcieri* v. *Salazar*, 555 U. S. ___, ___ (2009) (slip op., at 7). Here, there is nothing ambiguous about the language of §3501(a), and the Court does not claim otherwise. Although we normally presume that Congress "means in a statute what it says there," *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992), the Court today concludes that §3501(a) *does not* mean what it says and that a voluntary confession may be suppressed under the *McNabb-Mallory* rule.[2] This supervisory rule, which requires the suppression of a confession where there was unnecessary delay in bringing a federal criminal defendant before a judicial officer after arrest, was announced long before 18 U. S. C. §3501(a) was adopted. According to the Court, this rule survived the enactment of §3501(a) because Congress adopted that provision for the sole purpose of abrogating *Miranda* and apparently never realized that the provision's broad language would also do away with the *McNabb-Mallory* rule. I disagree with the Court's analysis and therefore respectfully dissent.

## II

### A

The Court's first and most substantial argument invokes "the antisuperfluousness canon," *ante*, at 12, under which a statute should be read, if possible, so that all of its provisions are given effect and none is superfluous. *Ante*, at 9–12. Section 3501(c) provides that a voluntary confession "shall not be inadmissible solely because of the delay" in bringing the defendant before a judicial officer if the defendant is brought before a judicial officer within six hours of arrest. If §3501(a) means that a voluntary confession may never be excluded due to delay in bringing the

---

[2] See *McNabb* v. *United States*, 318 U. S. 332 (1943), and *Mallory* v. *United States*, 354 U. S. 449 (1957).

defendant before a judicial officer, the Court reasons, then §3501(c), which provides a safe harbor for a subset of voluntary confessions (those made in cases in which the initial appearance occurs within six hours of arrest), is superfluous.

Canons of interpretation "are quite often useful in close cases, or when statutory language is ambiguous. But we have observed before that such 'interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature.'" *United States* v. *Monsanto*, 491 U. S. 600, 611 (1989) (quoting *United States* v. *Albertini*, 472 U. S. 675, 680 (1985)). Like other canons, the antisuperfluousness canon is merely an interpretive aid, not an absolute rule. See *Connecticut Nat. Bank*, 503 U. S., at 254 ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete'"). There are times when Congress enacts provisions that are superfluous, and this may be such an instance. Cf. *id.*, at 253 (noting that "[r]edundancies across statutes are not unusual events in drafting"); *Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 445–446 (1995) (SOUTER, J., dissenting) (noting that, although Congress "indulged in a little redundancy," the "inelegance may be forgiven" because "Congress could sensibly have seen some practical value in the redundancy").

Moreover, any superfluity created by giving subsection (a) its plain meaning may be minimized by interpreting subsection (c) to apply to confessions that are otherwise voluntary. The Government contends that §3501(c), though inartfully drafted, is not superfluous because what the provision means is that a confession is admissible if it is given within six hours of arrest and it is *otherwise* voluntary—that is, if there is no basis other than prepresentment delay for concluding that the confession was coerced. Read in this way, §3501(c) is not superfluous.

The Court rejects this argument on the ground that

"'Congress did not write the statute that way,'" *ante*, at 10, and thus, in order to adhere to a narrow reading of §3501(c), the Court entirely disregards the unambiguous language of §3501(a). Although §3501(a) says that a confession is admissible if it is "voluntarily given," the Court reads that provision to mean that a voluntary confession may not be excluded on the ground that the confession was obtained in violation of *Miranda*. To this reading, the short answer is that Congress *really* did not write the statute that way.

As is true with most of the statutory interpretation questions that come before this Court, the question in this case is not like a jigsaw puzzle. There is simply no perfect solution to the problem before us.

Instead, we must choose between two imperfect solutions. The first (the one adopted by the Court) entirely disregards the clear and simple language of §3501(a), rests on the proposition that Congress did not understand the plain import of the language it used in subsection (a), but adheres to a strictly literal interpretation of §3501(c). The second option respects the clear language of subsection (a), but either accepts some statutory surplusage or interprets §3501(c)'s reference to a voluntary confession to mean an otherwise voluntary confession. To my mind, the latter choice is far preferable.

B

In addition to the antisuperfluousness canon, the Court relies on the canon that favors a specific statutory provision over a conflicting provision cast in more general terms, *ante*, at 11, but that canon is inapplicable here. For one thing, §3501(a) is quite specific; it specifically provides that if a confession is voluntary, it is admissible. More important, there is no other provision, specific or general, that conflicts with §3501(a). See *National Cable & Telecommunications Assn., Inc.* v. *Gulf Power Co.*, 534 U. S.

327, 335–336 (2002) ("It is true that specific statutory language should control more general language *when there is a conflict between the two*. Here, however, there is no conflict" (emphasis added)). Subsection (c) is not conflicting because it does not authorize the suppression of any voluntary confession. What the Court identifies is not a conflict between two statutory provisions but a conflict between the express language of one provision (§3501(a)) and the "negative implication" that the Court draws from another (§3501(c)). *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 355 (1994). Because §3501(c) precludes the suppression of a voluntary confession based solely on a delay of less than six hours, the Court infers that Congress must have contemplated that a voluntary confession could be suppressed based solely on a delay of more than six hours. The Court cites no authority for a canon of interpretation that favors a "negative implication" of this sort over clear and express statutory language.

## C

The Court contends that a literal interpretation of §3501(a) would leave the prompt presentment requirement set out in Federal Rule of Criminal Procedure 5(a)(1) "without any teeth, for . . . if there is no *McNabb-Mallory* there is no apparent remedy for delay in presentment." *Ante*, at 15. There is nothing strange, however, about a prompt presentment requirement that is not enforced by a rule excluding voluntary confessions made during a period of excessive prepresentment delay. As the Court notes, "[t]he common law obliged an arresting officer to bring his prisoner before a magistrate as soon as he reasonably could," *ante*, at 1, but the *McNabb-Mallory* supervisory rule was not adopted until the middle of the 20th century. To this day, while the States are required by the Fourth Amendment to bring an arrestee promptly before a judicial officer, see, *e.g.*, *County of Riverside* v. *McLaughlin*,

500 U. S. 44, 56 (1991), we have never held that this constitutional requirement is backed by an automatic exclusionary sanction, see, *e.g.*, *Hudson* v. *Michigan*, 547 U. S. 586, 592 (2006). And although the prompt presentment requirement serves interests in addition to the prevention of coerced confessions, the *McNabb-Mallory* rule provides no sanction for excessive prepresentment delay in those instances in which no confession is sought or obtained.

Moreover, the need for the *McNabb-Mallory* exclusionary rule is no longer clear. That rule, which was adopted long before *Miranda*, originally served a purpose that is now addressed by the giving of *Miranda* warnings upon arrest. As *Miranda* recognized, *McNabb* and *Mallory* were "responsive to the same considerations of Fifth Amendment policy" that the *Miranda* rule was devised to address. *Miranda* v. *Arizona*, 384 U. S. 436, 463 (1966).

In the pre-*Miranda* era, the requirement of prompt presentment ensured that persons taken into custody would, within a relatively short period, receive advice about their rights. See *McNabb* v. *United States*, 318 U. S. 332, 344 (1943). Now, however, *Miranda* ensures that arrestees receive such advice at an even earlier point, within moments of being taken into custody. Of course, arrestees, after receiving *Miranda* warnings, may waive their rights and submit to questioning by law enforcement officers, see, *e.g.*, *Davis* v. *United States*, 512 U. S. 452, 458 (1994), and arrestees may likewise waive the prompt presentment requirement, see, *e.g.*, *New York* v. *Hill*, 528 U. S. 110, 114 (2000) ("We have . . . 'in the context of a broad array of constitutional and statutory provisions,' articulated a general rule that presumes the availability of waiver, . . . and we have recognized that 'the most basic rights of criminal defendants are . . . subject to waiver'"). It seems unlikely that many arrestees who are willing to waive the right to remain silent and the right to the assistance of counsel during questioning would balk at waiving

the right to prompt presentment. More than a few courts of appeals have gone as far as to hold that a waiver of *Miranda* rights also constitutes a waiver under *McNabb-Mallory*. See, *e.g.*, *United States* v. *Salamanca*, 990 F. 2d 629, 634 (CADC), cert. denied, 510 U. S. 928 (1993); *United States* v. *Barlow*, 693 F. 2d 954, 959 (CA6 1982), cert. denied, 461 U. S. 945 (1983); *United States* v. *Indian Boy X*, 565 F. 2d 585, 591 (CA9 1977), cert. denied, 439 U. S. 841 (1978); *United States* v. *Duvall*, 537 F. 2d 15, 23–24, n. 9 (CA2), cert. denied, 426 U. S. 950 (1976); *United States* v. *Howell*, 470 F. 2d 1064, 1067, n. 1 (CA9 1972); *Pettyjohn* v. *United States*, 419 F. 2d 651, 656 (CADC 1969), cert. denied, 397 U. S. 1058 (1970); *O'Neal* v. *United States*, 411 F. 2d 131, 136–137 (CA5), cert. denied, 396 U. S. 827 (1969). Whether or not those decisions are correct, it is certainly not clear that the *McNabb-Mallory* rule adds much protection beyond that provided by *Miranda*.

D

The Court contends that the legislative history of §3501 supports its interpretation*,* but the legislative history proves nothing that is not evident from the terms of the statute. With respect to §3501(a), the legislative history certainly shows that the provision's chief backers meant to do away with *Miranda*,[3] but the Court cites no evidence that this was all that §3501(a) was intended to accomplish. To the contrary, the Senate Report clearly says that §3501(a) was meant to reinstate the traditional rule that a

_____

[3] At argument, the Government conceded "that section (a) was considered to overrule *Miranda* and subsection (c) was addressed to *McNabb-Mallory*." See Tr. of Oral Arg. 38. It is apparent that the attorney for the Government chose his words carefully and did not concede, as the Court seems to suggest, that subsection (a) was intended to do no more than to overrule *Miranda* or that subsection (c) was the only part of §3501 that affected the *McNabb-Mallory* rule.

confession should be excluded only if involuntary, see
S. Rep. No. 1097, 90th Cong., 2d Sess., 38 (1968) (Senate
Report), a step that obviously has consequences beyond
the elimination of *Miranda*. And the Senate Report re-
peatedly cited *Escobedo* v. *Illinois*, 378 U. S. 478 (1964), as
an example of an unsound limitation on the admission of
voluntary confessions, see Senate Report 41–51, thus
illustrating that §3501(a) was not understood as simply an
anti-*Miranda* provision. Whether a majority of the Mem-
bers of the House and Senate had the *McNabb-Mallory*
rule specifically in mind when they voted for §3501(a) is
immaterial. Statutory provisions may often have a reach
that is broader than the specific targets that the lawmak-
ers might have had in mind at the time of enactment.

The legislative history relating to §3501(c) suggests
nothing more than that *some Members* of Congress may
mistakenly have thought that the version of §3501 that
was finally adopted would not displace the *McNabb-
Mallory* rule. As the Court relates, the version of §3501(c)
that emerged from the Senate Judiciary Committee would
have completely eliminated that rule. See *ante*, at 12–13.
Some Senators opposed this, and the version of this provi-
sion that was eventually passed simply trimmed the rule.
It is possible to identify a few Senators who spoke out in
opposition to the earlier version of subsection (c) and then
voted in favor of the version that eventually passed, and it
is fair to infer that these Senators likely thought that the
amendment of subsection (c) had saved the rule. See 114
Cong. Rec. 14172–14175, 14798 (1968). But there is no
evidence that a majority of the House and Senate shared
that view, and any Member who took a few moments to
read subsections (a) and (c) must readily have understood
that subsection (a) would wipe away all non-constitution-
ally based rules barring the admission of voluntary confes-
sions, not just *Miranda*, and that subsection (c) did not
authorize the suppression of any voluntary confessions.

The Court unjustifiably attributes to a majority of the House and Senate a mistake that, the legislative history suggests, may have been made by only a few.

### E

Finally, the Court argues that under a literal reading of §3501(a), "many a rule of evidence [would] be overridden in case after case." *Ante*, at 12. In order to avoid this absurd result, the Court says, it is necessary to read §3501(a) as merely abrogating *Miranda* and not the *McNabb-Mallory* rule. There is no merit to this argument.[4]

The language that Congress used in §3501(a)—a confession is "admissible" if "voluntarily given"—is virtually a verbatim quotation of the language used by this Court in describing the traditional rule regarding the admission of confessions. See, *e.g.*, *Haynes* v. *Washington*, 373 U. S. 503, 513 (1963) ("'In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort.'" (quoting *Wilson* v. *United States*, 162 U. S. 613, 623 (1896))); *Lyons* v. *Oklahoma*, 322 U. S. 596, 602 (1944); *Ziang Sung Wan* v. *United States*, 266 U. S. 1, 15 (1924); *Bram* v. *United States*, 168 U. S. 532, 545 (1897). In making these statements, this Court certainly did not mean to suggest that a voluntary confession must be admitted in those instances in which a standard rule of evidence would preclude admission, and there is no reason to suppose that Congress meant any such thing either. In any event, the Federal

―――――――

[4] Contrary to the Court's suggestion, cases in which one of the standard Rules of Evidence might block the admission of a voluntary confession would seem quite rare, and the Court cites no real-world examples. The Court thus justifies its reading of §3501, which totally disregards the clear language of subsection (a), based on a few essentially fanciful hypothetical cases that, in any event, have been covered since 1975 by the Federal Rules of Evidence.

Rules of Evidence now make it clear that §3501(a) does not supersede ordinary evidence Rules, including Rules regarding privilege (Rule 501), hearsay (Rule 802), and restrictions on the use of character evidence (Rule 404). Thus, it is not necessary to disregard the plain language of §3501(a), as the Court does, in order to avoid the sort of absurd results to which the Court refers.

For all these reasons, I would affirm the decision of the Court of Appeals, and I therefore respectfully dissent.