*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MUHAMMAD ALTANTAWI,

        Defendant-Appellant.

UNPUBLISHED
September 5, 2019

No. 346775
Oakland Circuit Court
LC No. 2017-265355-FJ

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

Servitto, J. (*concurring in part and dissenting in part*)

I respectfully dissent from the majority's conclusion that defendant was not subject to a custodial interrogation within the meaning of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and that the trial court therefore did not err by denying defendant's motion to suppress his statements made during the August 22, 2017 police interview. In all other respects, I agree with the majority.

In *Miranda*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis; the next step asks the additional question of whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. *People v Elliott*, 494 Mich 292, 311; 833 NW2d 284(2013) (citations and quotation marks omitted). Thus, whether a person is "in custody" is an objective inquiry that takes into account two discrete inquiries—what were the circumstances surrounding the interrogation and, given those circumstances, would a reasonable person feel he or she was free to terminate the interrogation and leave? *JDB v North Carolina*, 564 US 261, 270; 131 S Ct 2394; 180 L Ed 2d 310 (2011). In order to determine how a suspect would have gauged his or her freedom of movement, courts must examine the following circumstances surrounding the interrogation:

> (1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical

restraints during the questioning; and (5) the release of the interviewee at the end of the questioning. [*People v Barritt*, 325 Mich App 556, 562–63; 926 NW2d 811 (2018) (internal citations omitted)]

Here, the facts are undisputed that the police spoke to defendant earlier on August 22, 2017, in order to obtain information about his mother's death. Officer Molloy testified that defendant's father gave police permission to speak to defendant. Molloy testified that he asked defendant to describe the events of the previous day and he did, including providing one comment concerning his mother and the accident that Molloy found odd. The police then took video from the home's security system and left.

The police returned when information gleaned from the security video indicated that likely only defendant, his two sisters, and their mother were in the house at the time of her death, and it appeared that someone was in the room with her prior to her fall. Molloy testified that from the video, it appeared as if someone had "flipped" defendant's mother out of the window, and police wanted to talk with defendant and one of his sisters again to determine who was in the room at the time of the incident.

Defendant did not pick the time or location of the later police interrogation. Instead, upon the police's return to defendant's home, defendant's father indicated that he would prefer that police speak to defendant there, rather than the police station. Several officers were then allowed into the home by defendant's father. His father went upstairs, followed by police, to retrieve defendant and bring him downstairs.

Defendant was only 16 years old and, although the police questioned him in his home, the only adults in the home were police officers. Defendant's father had to pick up defendant's sister from school and left defendant alone with the police. Despite that police maintained that they were merely attempting to "nail down the timeframe," they persistently told defendant that he knew more than he was telling them and repeatedly suggested that his mother's fall might not have been an accident. They also told defendant that the person in the room with his mother appeared to be male (they stated they were 99.9% sure the person was male). Three officers participated in the questioning while other officers were obtaining a search warrant for the home at the same time as the questioning. At the end of the questioning, defendant's father returned and stated that he did not want the police to speak to defendant anymore without an attorney present, and that he wanted all his children to sit together. The officers refused to allow defendant to sit next to his sister, stating that the officers with the search warrant would show up soon. One of the officers stated, "until that happens we're—we're keeping everybody here, okay?" Thus, defendant was not released after the interview but instead kept at the home, under the supervision of the police, in a police dominated atmosphere, and away from his sisters. Thereafter, when one of the officers asked defendant for the passcode to his phone, defendant's father objected, and again told the officer not to speak to defendant without an attorney present. These circumstances amount to a custodial interrogation, particularly when one considers that defendant was a juvenile.

By its very nature, custodial police interrogation entails "inherently compelling pressures." *Miranda*, 384 US at 467. That pressure is so immense that it "can induce a frighteningly high percentage of people to confess to crimes they never committed." *Corley v*

*United States*, 556 US 303, 321; 129 S Ct 1558; 173 L Ed 2d 443 (2009). "That risk is all the more troubling—and recent studies suggest, all the more acute—when the subject of custodial interrogation is a juvenile." *JDB v North Carolina*, 564 US at 269.

> We have observed that children generally are less mature and responsible than adults, that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them, that they are more vulnerable or susceptible to outside pressures than adults, and so on. Addressing the specific context of police interrogation, we have observed that events that would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. No matter how sophisticated, a juvenile subject of police interrogation cannot be compared to an adult subject. [*JDB v North Carolina*, 564 US at 272–73 (internal citations, quotation marks, and punctuation omitted)]

The totality of the circumstances set forth above, including defendant's age, indicates that defendant was in custody while the police were questioning him. I would therefore have found that the trial court erred in denying defendant's motion to suppress his statements made during the August 22, 2017 interrogation.

/s/ Deborah A. Servitto