NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent, for the majority’s holdings are contrary to the Leahy-Smith America Invents Act, Pub.L. No. 112-29, 25 Stat. 284 (2011) (codified at Title 35 of the United States Code). The post-grant proceedings established by the Act were intended as “quick and cost effective alternatives to litigation.” H.R.Rep. No. 112-98, pt. 1, at 48 (2011). That legislative plan has been repeatedly thwarted by the implementing bodies, administrative and judicial.
These post-grant proceedings were designed to provide rigorous inquiry and confident adjudication as a surrogate for district court litigation, with the added benefits of administrative expertise and efficiency. As part of this new agency procedure, the Act established a threshold step called “institution” by . the Director of the PTO followed by trial and adjudication, by a new adjudicatory body established in the PTO. The “institution”' step is a carefully designed threshold, whereby only meritorious challenges will be considered. And as a safeguard of administrative objectivity, the legislation divided the functions of institution and trial into separate bodies within the PTO.
The panel majority states that “there is nothing in the Constitution or the statute that precludes the same Board panel from making the decision to institute and then rendering the final opinion.” Maj. Op. at 1033.. That is incorrect. The statute requires that these proceedings be separated, the first decision required to be made by the Director, and the second decision made by the Board. This court has now endorsed proceedings in which the Board makes both decisions. This procedure cannot be reconciled with the statute.
At the first stage, the Director determines whether the review is to be instituted. 35 U.S.C. § 314(a) (“The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition ... and any response ... shows that there is a reasonable likelihood that the petitioner would prevail with, respect to at least one of the claims challenged in the petition.”). (Qf course, the Director may designate an examiner or solicitor to conduct this initial review.)
*1036 If instituted by the Director, the Board then conducts a trial on the merits. 35 U.S.C. § 316(c) (“The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter”). “The statute thus separates the Director’s decision to ‘institute’ the review, § 314, on one hand from the Board’s ‘conduct’ of the review ‘instituted’ by the Director, § 316(c), and the Board’s subsequent ‘written decision,’ § 318, on the other.” St. Jude Med., Cardiology Div., Inc. v. Volcano Corp., 749 F.3d 1373, 1375 (Fed.Cir.2014).
The threshold determination to institute post-grant review requires the Director to find that there is more-likely-than-not an error in the grant of at least one claim of the patent. When such finding is made by the Director, the newly created independent tribunal in the PTO conducts a full trial, with discovery, testimony, experts, and other trappings of district court litigation. This trial, and the ensuing Board decision, are independent of and give no deference to the Director’s decision “to institute” the proceeding. In turn, the Board’s decision is not subject to review by the Director or in the district courts, and can be appealed only to this court. Our decision, in turn, cannot be challenged in infringement litigation between these parties.
The bifurcated design of post-grant review is clear not only from the language of §§ 314(a) and 316(c), but pervades the structure of these post-grant proceedings. Congress unambiguously placed these separate determinations in different decision-makers, applying different criteria. The majority’s endorsement of the PTO’s statutory violation departs not only from the statute, but also from the due process guarantee of a “fair and impartial decision-maker.”
I
Post-Grant Proceedings are a Surrogate for District Court Litigation
The America Invents Act is the result of more than six years of discussion, debate, negotiation, and collaboration among innovative industries, independent inventors, legislators, academics, research institutions, entrepreneurs, the concerned public, the intellectual property bar, and the PTO — all seeking to resolve problems that had arisen in the patent system. The key advance of the America Invents Act is its creation of a new procedure for reviewing previously granted patents, to shift determination of patent validity from the courts to the expert agency, to provide “quick and cost effective alternatives to litigation” and thereby to restore the innovation incentive of an effective system of patents. H.R.Rep. No. 112-98, pt. 1, at 48 (2011).
The design and intent of the America Invents Act is that these new PTO proceedings will provide early, reliable, and less costly adjudication of the major issues of patent validity. See 157 Cong. Rec. S5327 (Sept. 6, 2011) (statement of Sen. Leahy) (“This bill will establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs, while making sure no party’s access to court is denied.”).
These new proceedings were developed in the context of the shortcomings of the then-existing inter partes reexamination system. That system authorized third parties or the patentee to request reexamination on showing a “substantial new question of patentability.” 35 U.S.C. § 312(a). Reexamination then proceeded similarly to initial examination, including the right of amendment; appeal could be taken to the *1037 Patent Office Board of Appeals and Interferences and then to the courts. Criticism focused on the prevalence of cumulative and harassing attacks, whereby the vitality of the patent could be consumed by multiple and time-consuming proceedings. The America Invents Act sought to address these concerns, as well as the expense and duration of litigation of validity in the district courts.
The America Invents Act requires an initial decision by the Director as to whether post-grant review is warranted at all; this is required to be made within three months of the filing of a petition for review. 35 U.S.C. § 314(b); see 157 Cong. Rec. S1376 (Mar. 28, 2011) (statement of Sen. Kyi) (“Among the reforms that are expected to expedite these proceedings are ... the elevated threshold for instituting proceedings. The elevated threshold will require challengers to front load their case.”). The statute requires petitioners to demonstrate a “reasonable likelihood” of invalidity as to at least one claim, in order for institution to be granted. 35 U.S.C. § 314(a).
Interlocutory appeal of a decision on the question of institution is barred by statute. The legislative record explains that the America Invents Act “eliminates intermediate administrative appeals of inter partes proceedings to the BPAI.... By reducing two levels of appeals to just one, this change will substantially accelerate the resolution of inter partes cases.” 157 Cong. Rec. S1376 (Mar. 28, 2011) (statement of Sen. Kyi). However, this salutary purpose did not discard the protections of due process.
The threshold institution proceeding is designed to avoid the disadvantages of the prior inter partes practice, for: “The Patent Office has indicated that it currently is forced to accept many requests for ex parte and inter partes reexamination that raise challenges that are cumulative to or substantially overlap with issues previously considered by the Office with respect to the patent.” Id. The institution step also protects the patent owner from “attacks on patents that raise issues that are substantially the same as issues that were already before the Office with respect to the patent.” Id.
This institution procedure, which “requir[es] the petitioner to present a prima facie case justifying a rejection of the claims in the patent,” id. at S1375, tracks the obligation of a complainant to provide a legally sufficient pleading. Thereafter the adjudicatory body conducts a trial and completes its proceedings within one year (with extension for good cause shown). 35 U.S.C. § 316(a)(11); see 157 Cong. Rec. S1366 (Mar. 8, 2011) (Republican Pol. Comm. Leg. Notice S.23 (Feb. 28, 2011) entered by Sen. Kyl) (“These reforms add additional procedural protections to the process by converting the reexamination into an adjudicative proceeding to be known as ‘inter partes review.’ Inter partes review must be completed with one year of being instituted.”).
The America Invents Act requires that the trial be conducted, and the matter finally decided, by a different part of the PTO than makes the decision to institute. These post-grant proceedings have become the new frontier of patent litigation.[1] Threatening the viability of this new system, however, is the disregard of the procedures established by the America Invents Act.
*1038 II
The Statutory Separation of the Decision to Institute and the Decision on Validity
The panel majority holds that the decision to institute may be made by the PTAB, not by the Director, and that it may be made by the same PTAB panel that would then conduct the trial and make the validity decision. This violation of the statute has been criticized by practitioners, citing the “actual or perceived bias against the patent owner” because the administrative patent judges are “put in the position of defending their prior decisions to institute the trial.” AIPLA, Comments on PTAB Trial Proceedings, at 20 (Oct. 16, 2014), available at http://www.uspto.gov/ip/ boards/bpai/aipla^20141016.pdf.
It cannot be ignored that this transfer to the Board of the Director’s statutory assignment violates the text, structure, and purpose of the America Invents Act. The statutory separation of roles cannot be abrogated by either the PTO or this court.
In defense of abrogation, the panel majority cites a treatise that reports that administrative agencies have been authorized to perform both investigative and adjudicatory functions. Maj. Op. at 1029-30 (citing 2 Richard J. Pierce, Jr., Administrative Law Treatise § 9.9, p. 892 (5th ed.2010).). However, such authorization cannot violate the implementing legislation.
Due process guarantees “a fair trial in a fair tribunal.” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Permitting the same decision-maker to review its own prior decision may not always provide the constitutionally required impartial decision maker. ' “The right to an impartial decision marker is unquestionably an aspect of procedural due process .... This applies to administrative proceedings as well as judicial trials.” NEC Corp. v. United States, 151 F.3d 1361, 1371 (Fed.Cir.1998) (internal citations omitted).
As stated in Mathews v. Eldridge, “identification of the specific dictates of due process generally requires consideration of three distinct factors,” 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The three factors are “the private interest that will be affected by the official action,” the “risk of an erroneous deprivation,” and the “fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Id. Here, the first two factors weigh heavily in favor of the divided decision-making of the America Invents Act, with scant additional burden.
In evaluating administrative processes for prejudgment this court has considered the “bifurcation” of other decision-making processes and the “statutory and regulatory protections” for the party subject to a deprivation. NEC Corporation, 151 F.3d at 1371. In NEC Corporation this court upheld the bifurcated administrative process involved in antidumping duty proceedings:
First of all, an antidumping investigation is bifurcated: Commerce makes less-than-fair value determinations for a class or kind of foreign merchandise, and the ITC makes injury determinations. Only if Commerce determines that the merchandise is being sold at less-than-fair value, see 19 U.S.C. § 1673(1) (1994), and the ITC determines that a domestic industry is materially injured or is threatened with material injury, see 19 U.S.C. § 1673(2), does Commerce issue an antidumping order. See 19 U.S.C. § 1673. This bifurcation reduces the risk that an improper bias will deprive importers of their due process rights.
*1039 151 F.3d at 1373. In contrast, the unitary procedure now implemented by the PTO and ratified by this court enlarges, rather than reduces, the “risk [of] improper bias.” Id.
If bifurcated decision-making is required to reduce the risk of erroneous deprivation in antidumping proceedings, similar protection is at least as appropriate for post-grant proceedings. And contrary to the panel majority’s holding, Congress explicitly provided for exactly that kind of deci-sional separation in the America Invents Act.
My colleagues also suggest analogy to a district court’s preliminary determination of whether there is “a likelihood of success on the merits” for purposes of responding to a request for preliminary injunction. Maj. Op. at 1030 (citing Fed.R.Civ.P. 65). However, such decisions are immediately subject to appeal.
In Withrow v. Larkin, 421 U.S. 35, 58 n. 25, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Court expressly reserved the question of “[allowing a decisionmaker to review and evaluate his own prior decision.” We need not decide this question here, for the possible potential conflict was foreseen by the legislators, and by statute was forestalled. All that is needed is to apply the statute as it was written. The statute divides post-grant authority between the Director, who is responsible for deciding whether to institute review, and the Board of administrative patent judges, charged with conducting the trial and rendering a decision on patent validity. The statute bars the Board from rendering both the institution and final decisions. As this court has recognized, “institution and invalidation are two distinct actions.” Versada Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306, 1319 (Fed.Cir.2015) (“In addition to being deeply embedded in federal administrative law, the distinction is built into the structure of this particular AIA statute.”).
The statute repeats several times the requirement that the Director make the institution decision. See, e.g., 35 U.S.C. § 314(c) (notification must be made of “the Director’s determination under subsection (a)”); § 314(d) (the Director may join parties “[i]f the Director institutes an inter partes review”). The Director’s institution decision carries a different burden of persuasion, is decided on limited submissions before trial, and is barred from appeal. In its implementing regulations, the Office excludes all substantive evidence from the patent owner’s preliminary response, including expert declarations or other rebuttal evidence. 37 C.F.R. § 42.107(c). Thus the statutory structure favors institution, for the overarching purpose is to provide a forum for early, expeditious review of granted patents. By placing the institution decision in different hands than the trial, Congress acted to preserve the process from human frailty.
The statute is equally clear that it is the Board that conducts the trial and issues a final decision. See 35 U.S.C. §§ 316(c), 318(a). This legislative assignment of functions cannot be ignored. See Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (“[0]ne of the most basic interpretative canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.” (internal citations omitted, alterations in original)); cf. United States v. Giordano, 416 U.S. 505, 514, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (holding that where a statute authorized wiretaps only by the Attorney General or any Assistant Attorney General specially designated, the statute “fairly read, was intended to limit the power to authorize wiretap *1040 applications” to the expressly named positions).
Statutes must be interpreted to conform to “the design of the statute as a whole and to its object and policy.” Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). The legislative division of these decisional roles is not subject to agency or judicial modification, whether by adjudication or by rulemaking. The PTO’s rulemaking authority does not extend to changing statutorily defined procedures. In promulgating 37 C.F.R. § 42.4 to transfer the Director’s institution responsibility to the Board, the PTO departed from the statute. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (“The ralemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.”).
“Although an agency’s interpretation of the statute under which it operates is entitled to some deference, ‘this deference is constrained by our obligation to honor the clear meaning of a statute; as revealed by its language, purpose, and history.’” Se. Cmty. Coll. v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (quoting Teamsters v. Daniel, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)); see Muwwakkil v. Office of Pers. Mgmt., 18 F.3d 921, 925 (Fed.Cir.1994) (“When an agency’s interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference.”).
Summary
The post-grant proceedings of the America Invents Act are a pioneering measure to shift several aspects of patent validity from the district courts to the PTO. The legislative purpose is to provide optimum decisional objectivity, in order to restore public confidence in the reliability of patents as investment incentives; this requires that the PTO proceedings conform to the statute. I respectfully dissent.

. As of October 31, 2015, the PTO had received more than 4000 petitions under this statute, see Patent Trial and Appeal Board Statistics, at 2 (Oct. 31, 2015) available at http://www.uspto.gov/sites/default/files/ documents/2015-10-3 lPTAB.pdf. Of the 2,450 completed proceedings, the Office instituted more than 1200 trials. Id. at 9.