# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-4348

CHARLES G. LOOMIS, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 1, 2025                                                    Decided July 15, 2025)

*Grace Hurley*, with whom *Amy F. Odom* and *Zachary M. Stolz*, all of Providence, Rhode Island, were on the brief for the appellant.

*Edmund S. Pittman, Jr.*, with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Dustin P. Elias*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before TOTH, FALVEY, and LAURER, *Judges*.

FALVEY, *Judge*. filed the opinion of the Court. LAURER, *Judge*, filed a dissenting opinion.

FALVEY, *Judge*: Air Force veteran Charles G. Loomis appeals, through counsel, a July 13, 2023, Board of Veterans' Appeals decision denying educational assistance benefits for a private pilot license. The appeal is timely and the Court has jurisdiction to review the Board decision. *See* 38 U.S.C. §§ 7252(a), 7266(a).

Under 38 U.S.C. § 3672, veterans may receive educational assistance benefits while enrolled in a flight training course approved by a state or VA. In lieu of state or VA approval, flight training can also be constructively approved if it meets certain Federal Aviation Administration (FAA) accreditation requirements. 38 U.S.C. § 3672(b)(2)(A)(ii). This same statutory provision tells us that this constructive approval is "subject to" other enumerated statutory provisions. 38 U.S.C. § 3672(b)(2)(A). One of those enumerated provisions is 38 U.S.C. § 3680A, which requires that flight training be "given by an educational institution of higher learning [(IHL)[1]] for credit toward a standard college degree the eligible veteran is seeking." 38 U.S.C.

---

[1] The term IHL generally refers to colleges, universities, or other educational institutions offering two- or

§ 3680A(b). It is the intersection of these statutory provisions that is the subject of this panel decision.

We convened a panel of this Court, with oral argument, to decide whether the limitation that a course be offered by an IHL applies to the provision constructively approving certain flight training courses. We hold that it does. The "subject to" clause communicates that one statute is subordinate to another. Here, section 3672(b)(2)(A) says that it's subordinate to section 3680A, which includes section 3680A(b). And so, the IHL requirement must apply on top of constructive approval.

For this reason, we find that the Board did not err in denying Mr. Loomis's claim when it concluded his course was not offered by an IHL. Even if the Board did not discuss the intricacies of constructive approval, we agree with VA that the IHL issue controlled the Board's analysis.

Relatedly, we are asked to decide whether 38 C.F.R. § 21.4252(c), which prohibits VA from approving any private pilot training, conflicts with section 3672(b)(2)(A). Mr. Loomis insists that it does. Although he may have a point—the regulation seemingly prohibits any private pilot license training, while the statutory scheme leaves room for VA to approve such training—his challenge to the regulation dies with his statutory interpretation argument. Mr. Loomis's case failed at the Board because he did not meet the IHL requirement. At worst, the regulation would have been a separate impediment that would also have led to a denial. We need not, should not, and do not, reach the question of its validity here.

At bottom, to qualify for educational benefits for his private pilot training under section 3672(b)(2)(A), Mr. Loomis needed to show that his training was offered by an IHL as required by section 3680A(b). This is a showing he did not make. Thus, the Board correctly denied his claim. And so, we affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Mr. Loomis served in the U.S. Air Force from March 1995 to February 2015. Record (R.) at 2500. After service, he joined General Atomics as a field service representative. R. at 1170. Mr. Loomis hoped to become a sensor operator, but, as a prerequisite for that job, General Atomics required a private pilot certification. R. at 981. So, to pay for the certification, he thought of the

---

four-year degrees. 38 U.S.C. § 3452(f). More on this later.

benefits he earned serving our nation.

Thus, in March 2017, Mr. Loomis requested educational assistance benefits so he could complete flight training at MidCoast Aviation Services, LLC (MidCoast). R. at 973-74. To support his claim, Mr. Loomis submitted a VA Enrollment Certification, R. at 1000, an FAA medical certificate, R. at 1001, and an FAA certificate authorizing MidCoast to operate a provisional pilot school with a private pilot course, R. at 999. But this evidence didn't persuade VA to award benefits. Instead, the Agency focused on the fact that a State hadn't approved MidCoast's flight training course.

To that end, in May 2018, VA received VA Form 22-1998, Web Enabled Approval Management System (WEAMS) Certification, from the State of Georgia. R. at 1011-15. The WEAMS Certification form listed several MidCoast courses that were "approved per [the State]." R. at 1013-14. But missing from this list was the private pilot course. *See id*. So, that month, VA issued a decision explaining that MidCoast's private pilot course was not an approved program for VA educational assistance benefits. R. at 1016. And so, VA denied the educational assistance benefits claim. *Id*.

Mr. Loomis appealed this decision. R. at 1046. He argued that the State of Georgia deferred flight course approval to VA and that a VA regulation, which prohibited the Agency from awarding benefits for private pilot training, conflicted with title 38. *Id*. VA then issued a Statement of the Case maintaining that its decision was correct because a state must approve MidCoast's flight training course, which Georgia had not done. R. at 1035. Later, during a March 2023 Board hearing, Mr. Loomis clarified that he thought § 21.4252(c)(1) nullified two provisions under section 3680A and, contrary to legislative intent, imposed an IHL requirement on flight training courses. R. at 133.

In the July 2023 decision on appeal, the Board denied educational benefits for a private pilot license. R. at 5. The Board found that Mr. Loomis's basic entitlement to educational assistance benefits was undisputed. R. at 6. But it observed that MidCoast's private pilot course had not been approved by a state or VA. R. at 9. It also found that MidCoast was not recognized as an IHL and that Mr. Loomis was not taking the private pilot course for credit toward a standard college degree. *Id*. What's more, the Board acknowledged Mr. Loomis's argument that § 21.4252(c) nullified two statutes under title 38 and responded that § 21.4252(c) merely supplemented the statutes and, regardless, the Board noted that it lacked jurisdiction to determine a regulation's legality. R. at 9-

3

10. Accordingly, the Board concluded that Mr. Loomis was not entitled to educational assistance benefits for the private pilot course because it was not an approved course or program. R. at 10.

## II. ANALYSIS

### A. Our Flight Pattern

The parties' dispute focuses on the intersection of section 3672 with sections 3680A and 3034. Statutory interpretation is a question of law that we review de novo. *Lane v. Principi,* 339 F.3d 1331, 1339 (Fed. Cir. 2003). And our launchpad in any statutory interpretation case is the text of the statute; if the statute's meaning is clear, that is the end of the matter. *Lacey v. Wilkie*, 32 Vet.App. 71, 75 (2019). Thus, we will first lay out the statutory provisions at the heart of the parties' dispute. In that process, we'll highlight the most relevant portions of each statute and flag how they relate to the parties' arguments. We will also set up the relevant regulatory provisions. And then we'll proceed with our statutory interpretation.

Once we've navigated the interpretive issue, we'll need to decide whether the Board adequately explained its decision. To meet this requirement, the Board must address all issues raised by the claimant or reasonably raised by the record, including all potentially applicable statutes and regulations. *See* 38 U.S.C. § 7104(a), (d); *see also Thomas v. McDonough*, 97 F.4th 850, 853 (Fed. Cir. 2024); *McGee v. Peake*, 511 F.3d 1352, 1358 (Fed. Cir. 2008); *Robinson v. Peake*, 21 Vet.App. 545, 552-53 (2008), *aff'd sub nom*. *Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

### B. Statutory Background and Parties' Arguments

Section 3672 deals with the approval of courses for educational benefits purposes and tells us who is responsible for such approval. When "enrolled in a course of education offered by an educational institution," a veteran shall receive educational benefits "only if (1) such course is approved . . . by the State approving agency for the State where such educational institution is located, or by the Secretary." 38 U.S.C. § 3672(a).

To lessen the administrative burden, Congress decided that some educational programs can be constructively approved. Specifically, "[s]ubject to sections 3675(b)(1) and (b)(2), 3680A, 3684, and 3696 of this title, a program of education is deemed to be approved for purposes of this chapter if a State approving agency, or the Secretary . . . determines that the program" meets one of four enumerated criteria. 38 U.S.C. § 3672(b)(2)(A).

4

Relevant to Mr. Loomis, one of these constructively approved courses can be "[a] flight training course approved by the [FAA] that is offered by a certified pilot school that possesses a valid [FAA] pilot school certificate." 38 U.S.C. § 3672(b)(2)(A)(ii). This provision alone, Mr. Loomis argues, means that he can use his benefits to obtain a private pilot license. Appellant's Brief (Br.) at 6-10.

Not so, says the Secretary. He reminds us that Congress subjected the enumerated constructive categories to the requirements of sections 3675(b)(1) and (b)(2), 3680A, 3684, and 3696. Secretary's Br. at 8. Of these, section 3680A, among other things, and—"[e]xcept to the extent otherwise specifically provided in [title 38]"—prohibits the Secretary from "approv[ing] the enrollment of an eligible veteran in any course of flight training other than one given by an educational [IHL]."[2] 38 U.S.C. § 3680A(b). Because this provision—what we're calling the IHL requirement—prohibits him from approving enrollment in a course that's not offered by an IHL, the Secretary maintains that Mr. Loomis's educational program doesn't qualify. Secretary's Br. at 12.

That's not how Mr. Loomis sees it. He responds that the Secretary's reading fails to give effect to the words used by Congress. Reply Br. at 2. Mr. Loomis points out that Congress chose to constructively approve courses offered by a "certified pilot school." Appellant's Br. at 10. He thus asserts that this provision becomes meaningless if we read section 3680A(b) as prohibiting flight training at any course not offered by an IHL. Reply Br. at 3. Mr. Loomis builds on this point by referencing section 3034(d), *id.*, which allows the "Secretary [to] approve the pursuit of flight training (in addition to a course of flight training that may be approved under section 3680A(b) of this title) by an individual entitled to basic educational assistance," 38 U.S.C. § 3034(d).

Section 3034(d), or the back-to-school provision, deals with the approval of flight training for veterans who have already gotten their wings. A veteran qualifies for benefits under section

___

[2] We note that section 3672(a) uses the term "educational institution," whereas section 3680A(b) refers to IHLs. These are different things. An educational institution is "any public or private elementary school, secondary school, vocational school, correspondence school, business school, junior college, teachers' college, college, normal school, professional school, university, or scientific or technical institution, or other institution furnishing education for adults." 38 U.S.C. § 3452(c). And an IHL is "a college, university, or similar institution, including a technical or business school, offering postsecondary level academic instruction that leads to an associate or higher degree if the school is empowered by the appropriate State education authority under State law to grant an associate or higher degree." *Id.* § 3452(f). So all IHLs are educational institutions—a postsecondary-level subset of them—but not all educational institutions are IHLs.

5

3034(d) if three conditions are met. First, "such training [must be] generally accepted as necessary for the attainment of a recognized vocational objective in the field of aviation." Second, "the individual [seeking approval must] possess[] a valid private pilot certificate and meet[], on the day the individual begins a course of flight training, the medical requirements necessary for a commercial pilot certificate." *Id.* And third, "the flight school courses [must be] approved by the [FAA] and . . . offered by a certified pilot school that possesses a valid [FAA] pilot school certificate." *Id.* If these requirements are met, VA can approve a non-IHL flight course.

Invoking the back-to-school provision, Mr. Loomis reasons that, "[i]f section 3034(d) provides the only circumstances in which flight courses not offered at an [IHL] for credit toward a college degree can be approved, section 3672(b)(2)(A)(ii) does no work." Reply Br. at 3-4. In other words, "[t]he same courses that are 'deem[ed] to be approved' under section 3672(b)(2)(A)(ii) are already approved under section 3034(d)(3), so there was no need for Congress to add the former." *Id.*

Mr. Loomis then takes us back to the "[e]xcept to the extent otherwise specifically provided" language in 3680A(b). He asserts that section 3672(b)(2)(A)(ii) "specifically provide[s]" for an exception to the limitations in section 3680A(b). *Id.* at 5. In other words, Mr. Loomis asserts that section 3672(b)(2)(A)(ii) broadly authorizes a "flight training course approved by the [FAA] that is offered by a certified pilot school that possesses a valid [FAA] pilot school certificate" and that this controls over section 3680A(b). 38 U.S.C. § 3672(b)(2)(A)(ii).

And finally, Mr. Loomis steers us toward his regulatory argument. He homes in on 38 C.F.R. § 21.4252(c), which permits VA to approve enrollment in a flight training course "if an [IHL] offers the course for credit toward the standard college degree the veteran or eligible person is pursuing." He contends that this regulation is invalid because it doesn't reflect his interpretation of a constructive approval framework that's not limited by section 3680A. Appellant's Br. at 11-12. He also contends that, without any basis in section 3672, the regulation prohibits VA from approving any course "to obtain a private pilot's license or equivalent level training." *Id.* at 11; *see* 38 C.F.R. § 21.4252(c) (2025).

The Secretary oppugns these alleged inconsistencies. He notes that § 21.4252(c) derives authority not from section 3672, but from section 3680A. Secretary's Br. at 15. Section 3672, on the other hand, is implemented in 38 C.F.R. § 21.4263. This regulation provides the following:

(a)(1) A flight program may be approved if—

6

(i)(A) For 38 U.S.C. chapters 32 and 35 and 10 U.S.C. chapters 1606 and 1607, the flight courses that constitute the program of education meet [FAA] standards for such courses and the [FAA] and the State approving agency approve them; or

(B) For 38 U.S.C. chapters 30 and 33, effective August 1, 2011, the flight program is deemed approved (A flight program will be deemed approved if it is approved by the [FAA] and is offered by a certified pilot school that possesses a valid [FAA] pilot school certificate or provisional pilot school certificate under 14 CFR part 141. Flight programs offered at flight schools listed in paragraphs (b)(2) and (3) of this section will not be approved for VA training under 38 U.S.C. chapters 30 and 33); and

(ii)(A) The flight training offered by a flight school is generally accepted as necessary for the attainment of a recognized vocational objective in the field of aviation; or

(B) The flight training is offered by an [IHL] for credit towards a standard college degree program.

(2) A State approving agency may approve a flight course only if a flight school or an [IHL] offers the course. A State approving agency may not approve a flight course if an individual instructor offers it.

(3) This paragraph (a) issued under the authority of 10 U.S.C. 16136(c), 16166(c), 38 U.S.C. 3032(e), 3241(b), 3672, 3676, 3680A.

38 C.F.R. § 21.4263 (2025).

To sum up, relevant here are three statutory provisions and two regulations. Section 3672 tells us who approves courses, including flight training courses. Section 3680A modifies section 3672 and thus imposes additional requirements on the approval of flight training courses. Section 3034 operates alongside this framework; it permits VA to award benefits for veterans who already have a private pilot license and are going back to school. As for the regulations, § 21.4252(c) incorporates section 3680A's criteria and prohibits VA from awarding benefits for private pilot training. Section 21.4263 incorporates both sections 3672 and 3680A. This backdrop brings us to cruising altitude. We may thus proceed to interpreting the statutes.[3]

---

[3] Recognizing that programs governed by the FAA are beyond our element, we offer a brief explanation of two types of flight training. "FAA-approved pilot schools are certificated in accordance with Title 14, Code of Federal Regulations part 141." *See* https://www.faa.gov/training_testing/training/pilot_schools (last visited June 10, 2025). This is different than programs under part 61, which do not require the school to go through any particular certification

### C. Statutory Interpretation

*1. The Text*

As mentioned, statutory interpretation begins with the text. *Lacey*, 32 Vet.App. at 75. Here, three key phrases set up the rest of our analysis: "deemed to be approved," 38 U.S.C. § 3672(b)(2)(A); "subject to," *id.*; and "except to the extent otherwise specifically provided," 38 U.S.C. § 3680A(b). Because these phrases aren't defined by statute, we look to their ordinary meaning. *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407 (2011); *see also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (holding that courts "assume 'that the legislative purpose is expressed by the ordinary meaning of the words used'" (quoting *Richards v. United States*, 396 U.S. 1, 9 (1962))).

Let's start with the phrase "deemed to be approved." The word deem means "[t]o treat (something) as if (1) it were something else, or (2) it has qualities that it does not have." BLACK'S LAW DICTIONARY 523 (12th ed. 2024) [hereinafter BLACK'S]. And the word approve means "[t]o give formal sanction to; to confirm authoritatively" or "[t]o adopt." *Id.* at 126. Together, these terms refer to constructive approval—rather than being approved, something is treated as if it were approved. Practically, constructive approval "eliminate[s] the necessity" for an agency "to review and approve" the thing that requires approval. *Cf. USV Pharm. Corp. v. Weinberger*, 412 U.S. 655, 662-63 (1973). Here, what's being deemed approved is a flight training course. 38 U.S.C. § 3672(b)(2)(A). So, if a course is FAA approved and the school offering it is FAA certified, then a state or VA need not approve the course. *Id.*

Even so, section 3672 is "subject to" section 3680A. The word subject means "[d]ependent on or exposed to (some contingency)." BLACK'S at 1729. Further, under the subordinating/superordinating-language canon, the term "subject to" reflects subordinating language that "shows which provision prevails in the event of a clash[, ]but does not necessarily denote a clash of provisions." *Id.* at 1731. It also reflects that one statutory provision modifies

---

and thus offer more flexibility. Some universities, such as Florida Institute of Technology, offer both kinds of programs. *See* https://www.fit.edu/aeronautics/aviation/learn-to-fly/ (last visited June 10, 2025). So, under the Secretary's reading, VA could readily pay for part 141 training at Florida Tech. This course is approved by the FAA, so VA doesn't have to go through a separate approval process. And it is offered by an IHL. We don't foreclose the possibility that VA could cover a different type of flight training, such as part 61. But if that training is not FAA certified, then it would first need to go through a more robust approval process under title 38. Section 3672(b)(2)(A) offers a shortcut by allowing VA to piggyback on FAA approval and thus helps educational providers avoid having to go through yet another approval process.

8

another. LAWRENCE E. FILSON & SANDRA L. STROKOFF, THE LEGISLATIVE DRAFTERS DESK REFERENCE 289 (2d ed. 2008). It "should never introduce a provision that completely contradicts the provision that the *subject to* phrase modifies." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 126-28 (2012). Here, section 3680A thus modifies section 3672(b)(2)(A). *See* 38 U.S.C. § 3672(b)(2)(A). And, if the two provisions conflict, then section 3680A prevails. *Cf. NOAA Md., LLC v. Adm'r of Gen. Servs. Admin.*, 997 F.3d 1159, 1166 (Fed. Cir. 2021) (acknowledging the subordinating/superordinating-language canon).

But section 3680A prevails "except to the extent otherwise specifically provided" by another provision in title 38. 38 U.S.C. § 3680A(b). Two terms drive this phrase—except and specifically. An exception is "[s]omething that is excluded from a rule's operation." BLACK'S at 705. And the word "specific" refers to something that's "explicit" or "named." *Id.* at 1690. Thus, to be excused from section 3680A(b)'s criteria, another statutory provision must explicitly exclude that section. In sum, a flight training course that is deemed to be approved is treated as if it were approved by a state or VA, and thus it doesn't require actual approval by either agency. But section 3672(b)(2)(A), which allows constructive approval of flight training courses, is subject to (or modified by) section 3680A(b)'s IHL requirement. To avoid this requirement, a statutory provision must explicitly exclude this provision. With this framework, we'll take a broader look at the provisions for educational assistance benefits.

### 2. The Context

Having defined our three key phrases, we must next consider them in their statutory context. *See Lacey*, 32 Vet.App. at 76; *see also Rosinski v. Wilkie*, 32 Vet.App. 264, 273 (2020) ("It is a fundamental canon of statutory construction that 'the words of statute must be read in their context and with a view to their place in the overall statutory scheme'.") (quoting *Nielson v. Shinseki*, 607 F.3d 802, 807 (Fed. Cir. 2010)). Our goal is to harmonize the provisions that contain these phrases. *See Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (stating that each part or section of a statute or regulation "should be construed in connection with every other part or section so as to produce a harmonious whole"). As we'll show, doing so confirms that section 3680A(b) modifies section 3672(b)(2)(A) and thus doesn't permit veterans to receive educational benefits solely because a flight training course is constructively approved.

First, there's little doubt that the phrase "deemed to be approved" suggests that a state or

9

VA need not approve a flight training course. Generally, the task of approval belongs to these agencies; after all, a flight training course "is approved" by them. 38 U.S.C. § 3672(a). But if either VA or a state *determines* that a course is already FAA approved and the school offering it is FAA certified, then the course is "deemed to be approved" for VA educational benefits purposes. 38 U.S.C. § 3672(b)(2)(A). This presents two variations in the statutory language: first, between the phrases "is approved" and "deemed to be approved"; and second, between agency approval and determination. Both are significant.

Variations in statutory language are often deliberate. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))). Here, the two variations that we've identified reflect that, when a state or VA finds that a flight training course is FAA approved and the school that offers it is FAA certified, the FAA's determinations lead to constructive approval.[4] Otherwise, the state or VA must approve the flight training course.

Enter our second key phrase—"subject to." Constructive approval doesn't guarantee that a veteran will receive educational benefits for a flight training course. Even if a course is constructively approved under section 3672(b)(2)(A), that provision is "subject to" section 3680A. In other words, section 3672(b)(2)(A) is contingent on section 3680A. And section 3680A(b) instructs that VA shall not approve any veteran's *enrollment* in a flight training course unless it's offered by an IHL. That's different from approving a course itself, and it matters here.

We must assume Congress put the term "enrollment" in section 3680A(b) for a reason. *See Martinez v. Wilkie*, 31 Vet.App. 170, 176 (2019) (explaining that a court must presume that each word used by Congress in a statute is there for a reason and give effect to every word if possible); *see also Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. (17 Otto) 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it

---

[4] A description of what VA does when a course is approved versus when it's constructively approved might clarify this distinction. To approve a flight training course, VA must determine that it meets FAA standards for such courses. 38 C.F.R. § 21.4263(a)(1)(i)(A). Alternatively, to find that a course has been constructively approved, VA must determine only that the course has been approved by the FAA and that the school offering it has a valid pilot school certificate. 38 C.F.R. § 21.4263(a)(1)(i)(B). Thus, in our view, section 3672(b)(2)(A) continues to do real work that makes it easier and quicker for veterans to get training, even as the IHL requirement remains. With the dissent's reading of the two statutory provisions, we're unsure what work remains for the IHL limitation in section 3680A(b).

may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."). It suggests that a veteran faces two steps to receive benefits for a flight training course—approval of the course under section 3672(b)(2)(A), as well as approval of the veteran's enrollment therein under section 3680A(b).[5] Of course, that's presuming section 3680A(b) modifies section 3672(b)(2)(A).

Mr. Loomis doesn't read any modification into section 3672(b)(2)(A) from section 3680A(b), which means he wouldn't reach the enrollment distinction. Invoking our third key phrase, he asserts that, because section 3680A(b) uses qualified language ("[e]xcept to the extent otherwise specifically provided") when the other subsections in section 3680A do not, subsection (b) is open to exceptions. Appellant's Br. at 8. And, because subsection (b) exempts some provisions under title 38, of which section 3672(b)(2)(A) is a part, he says that subsection (b)'s IHL requirement does not modify section 3672(b)(2)(A). *Id*. This is unconvincing.

To be sure, three other subsections under section 3680A instruct that VA shall not approve a veteran's enrollment in an educational program. 38 U.S.C. § 3680A(a), (c)-(d). And yes, none of them have section 3680A(b)'s qualifying language. But that doesn't mean section 3680A(b) doesn't apply to any other provision with its own criteria; it means another provision under title 38 may preempt section 3680A(b) with explicit language. What's more, section 3672(b)(2)(A) doesn't preempt section 3680A(b); rather, its "subject to" clause invites section 3680A's limitations. Reading sections 3672(b)(2)(A) and 3680A(b) any differently would deprive the phrases "except to the extent otherwise specifically provided" and "subject to" of their ordinary meanings. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). That, we cannot do.

---

[5] Later, we conclude that this case starts and ends with the approval of enrollment under section 3680A(b). Contrary to what the dissent suggests, this doesn't imply that section 3672(b)(2)(A) does no work. *Post* at 23. To show why, we'll use an analogy.

Instead of two steps, think of an apartment complex with two doors: the front door of the building, and the door to a renter's unit. Each door serves a purpose. The front door keeps out those who aren't residents of the building. And the unit door keeps out those who aren't renting the unit. Together, the two thresholds whittle down potential entrants. We'd guess that those living in this complex wouldn't call either door superfluous.

Likewise, sections 3680A(b) and 3672(b)(2)(A) whittle down the courses for which VA must pay. Section 3680A(b) permits VA to pay for courses only if they're offered by an IHL. From that batch of courses, section 3672(b)(2)(A) obligates VA to pay for courses that it or a state approves, or that is deemed approved. Thus, saying this case starts and ends with the IHL requirement doesn't mean section 3672(b)(2)(A) never has work to do; it means Mr. Loomis doesn't have the key to unlock the section 3680A(b) door.

11

We acknowledge that one might read section 3680A(b) to say that any other provision can be an exception to this one if it's in title 38 (or chapter 106 of title 10); that is, if an exception is specifically provided elsewhere in title 38, then section 3680A(b) doesn't apply. This interpretation, however, ignores the order of the phrase "except to the extent otherwise specifically provided." The adverb "specifically" precedes the adjective "provided," not the preposition "in." 38 U.S.C. § 3680A(b). If "specifically" had instead preceded "in," then the adverb wouldn't do much work. Section 3680A(b) already specifies that exceptions are to be found in title 38, which means no provision outside that title except chapter 106 of title 10 can be an exception. *Cf. Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (applying the "[e]xpressio unius est exclusio alterius" canon (including one thing implies the exclusion of the alternative, BLACK'S at 724)). Thus, to give meaning to the word "specifically", section 3680A(b)'s exception clause is best read to require explicit exceptions—not anything that could be read as an exception if it's under title 38 or chapter 106 of title 10. *See Martinez*, 31 Vet.App. at 176; *Inhabitants of Montclair Twp.*, 107 U.S. at 152.

Had Congress wanted to insulate section 3672(b)(2)(A) from section 3680A(b), it would have done so more explicitly. One way to accomplish this would be to flag exceptions with cross-referential language, such as "notwithstanding" or "without regard to," in section 3672(b)(2)(A). *See* FILSON & STROKOFF, *supra*, at 289-90. That's what Congress included in section 3034(d).[6] Thus, Congress knows how to incorporate cross-references. *Cf. Dep't of Housing & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002). The fact that Congress used a subordinating cross-reference instead of an exceptional one in section 3672(b)(2)(A) only supports our plain reading of the flight training benefits scheme.[7] *Cf. O'Brien v. Wilkie*, 30 Vet.App. 21, 27 (2018) (explaining that the

---

[6] At oral argument, Mr. Loomis acknowledged that section 3034(d) "specifically" imposed a standard for approving flight training courses in addition to that under section 3680A(b). Oral Argument (OA) at 32:20-32:43, https://www.youtube.com/live/OO_CpAQGUkk [hereinafter OA].

[7] Our dissenting colleague agrees that we must "assume that Congress knows how to cross-reference other statutes." *Post* at 25. No complaints there. Indeed, Congress subjected section 3672(b)(2)(A) to "sections 3675(b)(1) and (b)(2), 3680A, 3684, and 3696." Put another way, Congress referenced two statutory subsections—(b)(1) and (b)(2) from 3675—and three sections—3680A, 3684, and 3696. Congress clearly knows how to say when either subsections or whole sections apply. That means Congress didn't mince words when it referenced section 3680A; it roped the whole provisional enchilada, including subsection (b), into section 3672(b)(2)(A)'s approval criteria. 38 U.S.C. § 3672(b)(2)(A).

In our colleague's view, this assumption plays out differently. He asserts that, because section 3672(b)(2)(A) references section 3680A generally and other provisions by their subsections specifically, this somehow means that Congress intended to subject section 3672(b)(2)(A) to all of section 3680A, except for subsection (b). *Id.* We're not

12

presence of two definitions of "child" in titles 38 and 42, respectively, showed that "Congress knows how to include children such as [an] appellant's grandson in the definition of 'child' but has not done so for VA purposes").

Even so, Mr. Loomis tries to distinguish section 3034(d)—the back-to-school provision—by asserting that it applies only to commercial pilot training. Appellant's Br. at 8-10; OA at 9:10-9:20. He thus argues that a flight training course need not satisfy section 3034(d)'s criteria—that the course contributes to a recognized vocational objective, the veteran already has a valid private pilot license, and the course is FAA approved—to be approved under section 3672(b)(2)(A). Appellant's Br. at 9. But we're not sure this is central to the dispute here. And to the extent that Mr. Loomis raises this argument to show that section 3680A(b) doesn't modify section 3672(b)(2)(A), we're not following his logic.

For starters, Mr. Loomis neither defines what commercial pilot training is nor explains why Congress would create a separate provision for it. And accepting terminology from the FAA, it seems that a veteran could just as easily get benefits for what Mr. Loomis refers to as a commercial pilot license under section 3672(b)(2)(A) as under section 3034(d). OA at 9:21-9:34. To be sure, an element of benefits under section 3034(d) is that a veteran already possesses a private pilot license. But section 3034(d) doesn't say that it applies only to commercial pilot training; it governs "the pursuit of flight training." 38 U.S.C. § 3034(d). More importantly, however, Mr. Loomis's argument loses us because it doesn't tie this commercial-or-private distinction back to sections 3672(b)(2)(A) or 3680A(b). *See* Appellant's Br. at 8-10.

---

buying it.

As discussed, this doesn't make sense with Congress's choice of listing subsections in the very same statutory provision. What's more, we know Congress knows how to carve out subsections when referencing other statutes. Congress created an exception to section 3680A(b) with the parenthetical in section 3034(d). But this parenthetical isn't the only tool in Congress's toolbox; it can also tack an exception clause onto a subordinating clause. For example, consider 18 U.S.C. § 1030(i)(2), which states the following:

> The criminal forfeiture of property under this subsection, any seizure and disposition thereof, and any judicial proceeding in relation thereto, shall be governed by the provisions of section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. [§] 853), except subsection (d) of that section.

We acknowledge that this provision is codified under a different title of the U.S. Code. Still, it highlights how Congress could have distinguished section 3680A(b) from section 3672(b)(2)(A). Instead of hiding a carveout behind unqualified references to sections and subsections, Congress could have made section 3672(b)(2)(A) subject to section 3680A, except subsection (b) of that section. But it didn't. And so, we must interpret the statute that we have before us. If section 3672(b)(2)(A) is subject to section 3680A without exception, then all of section 3680A applies; end of story.

13

That section 3034(d) does separate work in the statutory scheme and provides a path to a commercial pilot license does not negate section 3680A(b)'s limitations on when VA will pay for flight training at institutions that are presumptively approved under section 3672(b)(2)(A). All three provisions do different work. As Mr. Loomis sees it, section 3034(d) provides a path to commercial pilot training; at minimum, it gives those veterans with some flight training an option to use their benefits for more flight training. Section 3672(b)(2)(A) eases the burden on approving flight training by allowing state agencies or VA to avoid doubling up on approval done by FAA. And section 3680A(b) tells VA when it may or may not pay for flight training. Consequently, we don't understand how Mr. Loomis's observation that section 3034(d) deals with commercial pilot training affects our interpretation of these three statutory provisions. At least, we don't see how it should lead us to conclude that section 3680A(b)'s limitation on payment for courses to those offered at an IHL does not apply to those courses that are constructively approved under section 3672(b)(2)(A).

In his reply brief, Mr. Loomis advances three more arguments. First, he asserts that the term "pilot school" under section 3672(b)(2)(A) differs from an IHL under section 3680A(b), so section 3680A(b)'s approval criteria cannot apply to pilot schools.[8] Reply Br. at 1-2. Second, he asserts that, if section 3680A(b) modifies section 3672(b)(2)(A) but pilot schools and IHLs are distinct, then no course offered by an FAA-certified pilot school can ever be approved. *Id.* at 2-4. And lastly, he admonishes the Court not to read too much into the phrase "subject to" in section 3672(b)(2)(A) when section 3680A(b) permits exceptions under any other provision of title 38. We find these rebuttals unpersuasive.

Mr. Loomis's first two arguments present a distinction without a difference. Of course, we acknowledge that "a material variation in terms suggests a variation in meaning." SCALIA & GARNER, READING LAW, at 170; *see Bates v. United States*, 522 U.S. 23, 29-30 (1997). And yes,

---

[8] We asked Mr. Loomis where section 3672(b)(2)(A) specifically exempts constructively approved flight training courses from the IHL requirement. OA at 18:48-19:13. In response, he pointed to section 3672(b)(2)(A)'s use of the term "pilot school" instead of IHL. *Id.* at 19:14-19:44. But we're not persuaded that a variation in terms alone is the kind of specificity that section 3680A(b) contemplates. As Mr. Loomis acknowledged, section 3034(d) best exemplifies that specificity. *See* OA at 32:20-32:43. Section 3034(d) calls out section 3680A, recognizes the role that it plays in the educational assistance benefits scheme (noting that "a course of flight training . . . may be approved" if it satisfies section 3680A(b)), and provides that, "in addition to" approving courses that satisfy section 3680A(b), VA may approve "the pursuit of flight training." In other words, the variation in terms under section 3034(d) (the pursuit of flight training versus a flight training course) plays a role, but it isn't a solo act; rather, the variation and the callback to section 3680A(b) together deliver a compelling performance.

14

a pilot school isn't the same as an IHL. Still, it doesn't follow that a pilot school and an IHL are entirely separate entities only because they have different names. Rather, sometimes, a pilot school might be affiliated with an IHL. As we noted at oral argument, the FAA publishes a directory of pilot schools that includes programs that universities offer.[9] OA at 19:45-20:21; *see AVInfo Find a Facility Dashboard*, FED. AVIATION ADMIN., https://www.faa.gov/av-info/facility-dashboard (last visited May 28, 2025) (to find a pilot school, click on "PART 141 PILOT SCHOOL," type in a ZIP code, press the enter key, and click "See/Download Contact Information"). What we take from this directory is that, contrary to the veteran's argument, a veteran may receive benefits to take a flight training course that is offered by a pilot school. The pilot school simply needs to be part of an IHL.

Unlike Mr. Loomis's first two arguments, in which he advocated for giving effect to the terms "pilot school" and IHL, Mr. Loomis's third argument would sap the term "specifically" in section 3680A(b) of any meaning. He essentially contends that the phrase "except to the extent otherwise specifically provided" means that any provision in title 38 with its own criteria is an exception to section 3680A(b). But that would render the term specifically a legal nullity. Reply Br. at 4; *see Corley v. United States*, 556 U.S. 303, 314 (2009). As we understand it, the term "specifically" mandates that a provision acknowledge the modifying provision and show that the modifying provision doesn't apply. *See* BLACK'S at 1690; *see also Arellano v. McDonough*, 598 U.S. 1, 12 (2023) (discussing the general rule for effective dates of awards and listing specific exceptions for particular types of claims). And not only does section 3672(b)(2)(A) not except itself from section 3680A, but it subjects itself to section 3680A's provisions. Because the Court must give effect to each word according to its ordinary meaning, it cannot adopt the veteran's reading of section 3680A(b). *See Meeks v. West*, 12 Vet.App. 352, 354 (1999) (holding that, "where a statute has a plain meaning, a Court shall give effect to that meaning").

---

[9] Because the contents of the FAA's website are "facts of universal notoriety that are not subject to reasonable dispute," we may take judicial notice of them. *See Monzingo v. Shinseki*, 26 Vet.App. 97, 103 (2012) (per curiam), *overruled on other grounds by Euzebio v. McDonough*, 989 F.3d 1305 (Fed. Cir. 2021); *see also Crain v. Principi*, 17 Vet.App. 182, 189 (2003) (taking judicial notice of a city's ZIP Code). To be clear, we're not saying that any courses that are offered by the listed pilot schools would be approved for educational assistance benefits. *See Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of *facts* not subject to reasonable dispute."). We simply note the existence of this webpage to show that a pilot school and an IHL, while distinct, are not always wholly independent entities.

15

### 3. Statutory History

Having covered the statute's text and context, we'll consider Mr. Loomis's statutory history arguments. Mr. Loomis points out that the Post-9/11 GI Bill provided educational assistance benefits only for courses that were offered at an IHL. Appellant's Br. at 5; *see* Post-9/11 Veterans Educational Assistance Act of 2008, 110th Cong. § 5003(a)(1), 122 Stat. 2323, 2363 (2008) (current version at 38 U.S.C. § 3313). He notes, however, that Congress then passed the Post-9/11 Veterans Educational Assistance Improvements Act of 2010, which struck the IHL requirement from 38 U.S.C. § 3313. Appellant's Br. at 5-6; *see* Post-9/11 Veterans Educational Assistance Improvements Act of 2010 § 5003(a)(1), 38 U.S.C. § 3313(b). Mr. Loomis also contends that, because Congress enacted section 3672(b)(2)(A) after sections 3034(d) and 3680A(b), Congress knew that section 3680A(b) provided for an exception to its IHL requirement. OA at 31:25-32:00. We understand Mr. Loomis to argue that Congress purposely enacted section 3672(b)(2)(A) as an exception to section 3680A(b). We are unconvinced by either argument.

Mr. Loomis's first argument conflicts with the general-specific canon. Section 3313(b) refers broadly to "program[s] of education." By contrast, section 3672(b)(2)(A)(ii) refers narrowly to "flight training course[s]." If Congress desires, it can omit requirements for programs of education generally but impose those requirements for certain types of programs, such as flight training courses. And, to the extent that Congress enacts two conflicting provisions—one with general language and missing criteria, and the other with specific language and present criteria— the more specific provision prevails. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976) ("In a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies."); *see also* SCALIA & GARNER, READING LAW, at 183 ("Under th[e general/specific] canon, the specific provision is treated as an exception to the general rule."). That's what Congress did here. It declared that a veteran generally need not pursue an education at an IHL to qualify for educational assistance benefits. 38 U.S.C. § 3313(b). But if the veteran wants to take a flight training course, then the course must be offered by an IHL. 38 U.S.C. § 3680A(b). A flight training course is more specific than a program of education, so the flight training course criterion must prevail. *Cf. Brown*, 425 U.S. at 834.

As for his second argument, Mr. Loomis reads too much into the presumption of a purposive amendment. Congress's awareness of existing statutes doesn't imply its intent to carve out exceptions to those statutes. This is not to say section 3680A(b) doesn't permit carveouts; we've

16

simply found that section 3672(b)(2)(A) isn't one. So, although we should assume that Congress intended section 3672(b)(2)(A) "to have real and substantial effect," that doesn't mean Congress wanted sections 3672(b)(2)(A) and 3680A(b) to operate independently.[10] *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). And Mr. Loomis doesn't point us to any evidence in the text that reflects this intent. Instead, he directs us to the legislative history.

### 4. Legislative and Regulatory History

To bolster his reading of the statutory scheme, Mr. Loomis points to some legislative and regulatory history. So too does the Secretary. But "[t]he text is clear, so [the Court] need not consider this extra-textual evidence." *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017).

Even if the text were ambiguous, neither party shows (and we don't understand) how the legislative history clarifies anything. Should we base our interpretation on the legislative history, we would end up on a highway to the danger zone. *See Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in the judgment) ("But not the least of the defects of legislative history is its indeterminacy. If one were to search for an interpretive technique that, *on the whole,* was more likely to confuse than to clarify, one could hardly find a more promising candidate than legislative history."); *see also* Kenneth W. Starr, *Observations About the Use of Legislative History*, 1987 Duke L.J. 371, 375-76 (noting that legislative history hazards "the potential to mute (or indeed override) the voice of the statute itself" and "the potential for abuse, the cost of usage, and fictitious use"). With this risk in mind, we shall now dip into the parties' arguments only to show why the legislative history here is an unreliable source of meaning.

Mr. Loomis first asserts that, by "deem[ing] various programs and courses to be approved for VA purposes if they are approved by other agencies for programs under their jurisdiction," Congress intended section 3672(b)(2)(A) to "streamlin[e] the administration of educational assistance benefits and improve the delivery of benefits to veterans." Appellant's Br. at 7 (quoting

---

[10] The dissent insists that this reading renders the Post-9/11 Veterans Educational Assistance Improvements Act of 2010's removal of the IHL requirement from section 3313 superfluous. *Post* at 24. But the dissent also asserts that veterans can "use benefits for a wide range of programs unassociated with a college degree." *Post* at 25. These assertions beg the question: To what extent did Congress mean to remove the IHL requirement? According to the dissent, Congress meant to do so completely. *Id*. But we don't think Congress dealt in such absolutes.

We certainly agree that Congress "removed the blanket IHL requirement." *Post* at 4. That doesn't mean, however, that Congress purged the U.S. Code of that requirement; it's no longer in section 3313, but it still lives on in section 3680A(b). As such, we understand that the IHL requirement doesn't apply generally, but it does in specific circumstances. *See Brown*, 425 U.S. at 834. Our reading of sections 3680A(b) and 3672(b)(2)(A) stays true to that reality.

17

S. REP. NO. 111-346, at 21-22 (2010)).[11] But the natural reading of section 3672(b)(2)(A) already reflects a streamlined approval process. Rather than having to approve a flight training course under section 3672(b)(2)(A) *and* a veteran's enrollment therein under section 3680A(b), VA faces only one step of approval if it determines that the FAA has already approved the flight training course. Thus, by allocating one of VA's approval duties to the FAA, section 3672(b)(2)(A) streamlined the process of awarding educational assistance benefits. Our reading wouldn't conflict with this aim.

The goal of streamlining approval dovetails into another of Congress's purported goals: curtailing the abuse of educational assistance benefits. Per Mr. Loomis, Congress thought that streamlining the benefits process by implementing constructive approval would address systemic abuse. Appellant's Br. at 8 (citing 135 CONG. REC. S12,547 (daily ed. Oct. 3, 1989) (statement of Sen. Murkowski)).[12] Again, our reading of the statutory scheme doesn't conflict with this goal. The legislative history doesn't suggest that FAA approval of a flight training course should be the only criterion for a veteran to receive benefits for such a course. What's more, it's counterintuitive that Congress would remove a hurdle to prevent programmatic abuse. We don't understand how Mr. Loomis's reading addresses abuse better than ours, so we find this point unpersuasive.

Lastly, Mr. Loomis directs us to the U.S. Supreme Court's decision in *Rudisill v. McDonough*, in which the Court observed that the Post-9/11 GI Bill "enhanced" an outmoded

---

[11] This piece of legislative history is a report by the Senate Committee on Veterans' Affairs. Reliance on the report presents two problems. First, we cannot assume that the members of Congress who voted on the Post-9/11 GI Bill both read this report and agreed with its findings. *See Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 620 (1991) (Scalia, J., concurring in the judgment). And second, we can't be sure that the committee members drafted the report. Rather, as with any Senate report, it might have been drafted "by a committee staff member on his or her own initiative, and at worst by a committee staff member at the suggestion of a lawyer-lobbyist; and the purpose of those references was not primarily to inform the Members of Congress what the bill meant . . . but rather to influence judicial construction." *See Blanchard v. Bergeron*, 489 U.S. 87, 98-99 (1989) (Scalia, J., concurring in part and concurring in the judgment).

[12] Along with finding this piece of legislative history unpersuasive, we note that relying on it would be especially thorny—perhaps even more so than relying on a committee report. The statement reflects *one* senator's views of the Montgomery GI Bill expressed during a floor debate, which can hardly be imputed to all of Congress. And a senator's statements are seldom heard by all other senators, let alone by the House of Representatives, and thus don't carry the refinement and acquiescence of a final bill. *See Overseas Educ. Ass'n, Inc. v. Fed. Labor Relations Auth.*, 876 F.2d 960, 975 (D.C. Cir. 1989) (Buckley, J., concurring) ("Far less reliable, as sources of statutory meaning, are remarks made during floor debate—even 'authoritative' explanations offered by a bill's sponsors. . . . Thus members of Congress, in voting on a measure, must be presumed to have relied on the meaning of the words read in context on a printed page."). What's more, senators frequently read prepared remarks during floor debates. Like committee reports, these remarks are often (if not always) prepared by staff members, not by the senator. So, at best, a remark made during a floor debate reflects the views of one senator; more likely, it represents what the senator's staff *thinks* their boss's view is.

18

educational benefits program. Appellant's Br. at 5 (quoting *Rudisill v. McDonough*, 601 U.S. 294, 314 (2024)). This view refers to a 2008 legislative finding that

> "[i]t is in the national interest for the United States to provide veterans who serve on active duty in the Armed Forces after September 11, 2001, with enhanced educational assistance benefits that are worthy of such service and are commensurate with the educational assistance benefits provided by a grateful Nation to veterans of World War II."

Post-9/11 Veterans Educational Assistance Act of 2008, 110th Cong. § 5002(6), 122 Stat. 2323, 2357-58 (2008) (prior to 2010 amendment). On top of that, Mr. Loomis notes that, according to Congress, the Montgomery GI Bill benefits program had become "outmoded and designed for peacetime service."[13] Appellant's Br. at 5 (quoting Post-9/11 Veterans Educational Assistance Act of 2008 § 5002(6)). Neither *Rudisill* nor the legislative findings do enough work to change our view, because *Rudisill* involved a different issue and the legislative findings are too general.

We start with *Rudisill*. The case doesn't persuade us because it didn't deal with flight training courses. Rather, *Rudisill* was about how many months of benefits a veteran could receive for his education under the Montgomery and Post-9/11 GI Bills. 601 U.S. at 298. How this case translates to expanded options for approving flight training courses, the veteran does not explain.

Like *Rudisill*, the legislative findings aren't on point. But their problem is not that they deal with a different issue, but that they're too general. On the other hand, the provisions in the statutes on flight training courses specify that these courses must be offered by an IHL. Because these provisions are clear and specific, we need not give weight to the legislative findings. *See Reeves v. Astrue*, 526 F.3d 732, 737 (11th Cir. 2008) (stating that the court "cannot use Congress's general statements of findings and purpose to override the plain meaning of specific provisions of the Act").

For his part, the Secretary offers a 1992 House Report on section 3680A, which stated that a proposed law would "[l]imit approval of independent study to those courses that are part of an accredited degree program." H.R. REP. NO. 102-751, at 6 (1992). But this evidence doesn't advance the Secretary's argument. Another provision of section 3680A—subsection (a)(4)—deals

---

[13] We asked Mr. Loomis whether we could read sections 3672(b)(2)(A) and 3680A(b) as a two-step process. OA at 20:32-21:09. Relying on this legislative finding, Mr. Loomis responded that veterans would be entitled to the same, allegedly outmoded, scope of benefits to which they were entitled under the Montgomery GI Bill. *Id.* at 21:10-21:48. As we explain here, we cannot rely on Congress's general legislative findings in lieu of provisions that specifically address flight training courses. Otherwise, our reading wouldn't be faithful to Congress's intent, expressed in the plain operative language, as to whether veterans may receive benefits for these types of courses.

separately with independent study programs. And the Secretary doesn't explain how that provision has anything to do with flight training courses. Thus, his legislative history argument is unpersuasive.

Both parties point to a proposed regulation to support their arguments. Appellant's Br. at 8-9; Secretary's Br. at 11. They both highlight a statement that flight training courses "are exempt from all approval criteria except those limitations in" the statutes identified in section 3672(b)(2). Post-9/11 Improvements, Fry Scholarship, and Interval Payments Amendments, 88 Fed. Reg. 33,672 (proposed May 23, 2023) (to be codified at 38 C.F.R. pt. 21). As far as we can tell, this statement is just a reminder that section 3672(b)(2)(A) has a subordinating clause. Thus, it doesn't add anything to either party's argument, so we don't see why it should change our interpretation of the statutory scheme.

### 5. Pro-veteran Canon

Mr. Loomis claims that his interpretation of section 3672(b)(2)(A) is most consistent with "'the beneficence underpinning VA's veterans benefits scheme'." Appellant's Br. at 10 (quoting *Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013)). But because the statute is clear, this canon doesn't factor into our analysis. *See Rudisill*, 601 U.S. at 314 ("If the statute were ambiguous, the pro-veteran canon would favor [the veteran], but the statute is clear, so we resolve this case based on statutory text alone."). Otherwise, we would risk interpreting the statute in a way that's inconsistent with its ordinary meaning. Thus, we will disregard this argument.

### D. Regulatory Argument

We turn next to Mr. Loomis's regulatory argument. As a reminder, Mr. Loomis asserts that § 21.4252(c) should be set aside for two reasons. First, he argues that the regulation doesn't incorporate the constructive-approval framework. Appellant's Br. at 16. And second, he contends that the regulation's prohibition against approval of a flight training course "to obtain a private pilot's license" is inconsistent with section 3672(b)(2)(A). *Id.* at 15. We need not reach either of these contentions.

Mr. Loomis's first point flies or dies with his statutory argument because it hinges on the idea that an IHL requirement conflicts with the statutory scheme and legislative purpose. But, as determined, the statutory scheme is best read as creating a two-step process. And the IHL requirement is central to the enrollment step of that process. Thus, Mr. Loomis's point crashes and burns.

20

As to the second point, Mr. Loomis might be right, to a limited extent, that someone could obtain private pilot training at an IHL. But we need not decide whether this renders § 21.4252(c) invalid. This case starts and ends with whether VA is bound by the IHL requirement. We've found that it is, and the Board found that this requirement wasn't met. R. at 9. Thus, we need not reach this issue of regulatory invalidity. "[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment). With this principle in mind, we will examine this argument no further and instead turn to the only remaining issue for us to resolve.

### E. Reasons or Bases

We need to decide whether the Board adequately explained its decision. We find that it did.

We've already determined that section 3680A(b) modifies section 3672(b)(2)(A). A veteran who wants benefits for a flight training course under section 3672(b)(2)(A) must show that the course is both offered by an IHL and approved by a state or VA (or deemed approved because it was approved by the FAA). What we have yet to determine is whether the Board must make factual findings about both criteria—IHL affiliation and approval—if it denies these benefits. It does not.

To show why we reach this conclusion, all we need to do is point to the order in which section 3672(b)(2)(A) presents the two criteria. As the Secretary contends, and as the veteran acknowledges, section 3672(b)(2)(A) refers readers to section 3680A before it discusses the approval of flight training courses. Secretary's Br. at 8; *see* OA at 11:51-12:23. What we glean from this structure is that VA must first determine whether a veteran is eligible to enroll in a course before approving the course or determining that it has been constructively approved. *See Rosinski*, 32 Vet.App. at 273. In other words, VA's review starts (and can end) with the IHL requirement.

Based on this reading of section 3672(b)(2)(A), we and the veteran know why the Board denied his claim. The Board noted that MidCoast's private pilot course had not been approved by a state or VA. R. at 9. It also found that MidCoast was not recognized as an IHL and that Mr. Loomis was not taking the private pilot course for credit toward a standard college degree. *Id*. Although the Board did not address whether VA had found that the course was constructively approved, *see* R. at 6-10, it didn't need to get there. According to the Board, Mr. Loomis failed the

first step of the inquiry. R. at 9. All other issues were thus irrelevant, so we don't fault the Board for not discussing constructive approval. *See Robinson*, 21 Vet.App. at 552-53. Thus, its reasons or bases were adequate. *See Allday v. Brown,* 7 Vet.App. 517, 527 (1995).

### III. CONCLUSION

Based on the above, the July 13, 2023, Board decision is AFFIRMED.


LAURER, *Judge*, dissenting: To continue with the majority's flying terminology use, today's decision drops off target. It affirms a Board decision that denied educational assistance benefits by misinterpreting a statute that Congress enacted to *expand* veterans benefits. Put simply, the majority misses an opportunity to give effect to the meaning of words Congress enacted to implement its policy to help qualifying veterans cover expenses while training for a job.

For starters, the majority brushes past facts critical to understanding how Mr. Loomis would use private pilot training to reach his career goals and enhance his earning potential. So let's dive below the cloud ceiling for a closer look. Appellant served in the U.S. Air Force for 20 years, completing his military career as a joint terminal attack controller (JTAC). R. at 135, 1516, 1518, 1526, 2500. In that role, he coordinated airstrikes from the ground by synchronizing air support with ground troops for combat operations. R. at 135, 1518. Along with personal, campaign, and unit awards, appellant also earned a Bronze Star medal for his service in Afghanistan. R. at 1491, 2492, 2500. After retiring from the military, he worked as a field service representative for General Atomics. R. at 1170. But he wanted a higher-paying job as a sensor operator, which involves work comparable to a JTAC. R. at 8, 135, 1203. But unlike a JTAC who works from the ground, sensor operators control instruments aboard aircraft. R. at 135, 1203. Appellant found a vacant sensor operator position at General Atomics, where he was already employed, but he was missing one qualification: private pilot certification. R. at 135-36, 981, 1203. Without it, appellant's dream of becoming a sensor operator would remain grounded.

Thankfully, appellant had unused Post-9/11 GI Bill educational benefits, which he intended to use for the flight training needed to qualify for the sensor operator position. R. at 137. He didn't consider flight training offered by a college or university to be an option because their courses were taught during the workday and would conflict with his work. R. at 136. Plus, appellant wasn't looking for a degree program; he just wanted to get a private pilot license. Luckily, he found

22

MidCoast, an FAA-certified provisional pilot school offering a private pilot course that is located "right across the street [from where appellant works]." R. at 6-8, 136, 999. But the path toward his goal of becoming a sensor operator stopped there.

Under the majority's statutory interpretation, appellant can't use his well-earned GI Bill benefits to cover the cost of MidCoast's pilot course. In other words, it's the university course or nothing. According to my colleagues, 38 U.S.C. § 3672(b)(2)(A) doesn't expand benefit eligibility beyond the preexisting restriction that flight training must be offered by an IHL under 38 U.S.C. § 3680A(b). The majority is flat-out wrong.

"[O]ne of the most basic interpretive canons" requires the Court to construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (stating that the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). But the majority's interpretation renders section 3672(b)(2)(A) superfluous. The majority concludes that GI Bill benefits can be used only toward a flight course offered by an IHL. If that's true, section 3672(b)(2)(A) has absolutely no effect. As explained below, my interpretation gives meaning to *both* provisions—as is our duty in statutory interpretation cases.

I'll begin by addressing the majority's attempts to give section 3672(b)(2)(A) meaning. First, the majority concludes that section 3680A(b) is about *enrollment* and section 3672(b)(2)(A) is about the course itself. While the word "enrollment" appears in section 3680A(b), it doesn't appear in section 3672(b)(2)(A). The majority clings to this word at the expense of its textual context in a hapless attempt to make both provisions make sense. In doing so, the majority nullifies section 3672(b)(2)(A). Yet the context is clear: Section 3680A(b) addresses courses that are eligible for GI Bill benefits. In fact, the majority's conclusion rests on the premise that section 3680A(b) limits benefit eligibility to a flight training *course* that's offered by an IHL. In context, section 3680A(b) is just one provision among many that limits types of eligible courses. 38 U.S.C. § 3680A(a) (stating that the Secretary shall not approve enrollment in certain courses, including a bartending course, personality development course, certain sales courses, avocational or recreational courses that aren't a bona fide pursuit of an occupation, certain independent study programs, and certain courses not leading to a standard college degree offered by a proprietary

23

profit or nonprofit educational institution). Sections 3680A and 3672(b)(2)(A) are clearly about the type of courses that *may* be approved.

The majority also says that section 3672(b)(2)(A) serves a function because it removes part of the administrative burden pertaining to approving flight training courses. If section 3672(b)(2)(A) constructively approves FAA-approved courses from FAA-certified schools, then evidently this enables "State agencies or VA to avoid doubling up on approval done by FAA." *Ante* at 13. Framed this way, section 3672(b)(2)(A) certainly sounds like a shortcut. But this "easing the burden" argument is a straw man. FAA approval isn't a factor in section 3680A(b)'s requirements. The majority essentially spots a new step—FAA approval—and concludes that section 3672(b)(2)(A) allows the Secretary to skip it. The majority presents a hurdle only to knock it down. In other words, the majority purports to follow the text yet ignores the plain terms of section 3680A(b).

Pay attention to another point flying under the radar here: An interpretation that makes a provision superfluous "in practical effect" is the very kind of interpretation that the canon against surplusage rejects. *See TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001); *see also Corley*, 556 U.S. at 314-15 (rejecting the Government's attempt to interpret a provision "into a clarifying, if not strictly necessary, provision"). Practically, section 3672(b)(2)(A) has no effect under the majority's interpretation. Consider how section 3680A(b) operates: It limits approval of flight training courses to those given by an IHL—unless specifically provided elsewhere, of course. Whether the FAA has approved a flight training course offered by a certified pilot school is irrelevant. All that matters is whether the training is offered by an IHL. According to the majority, section 3672(b)(2)(A) does nothing to change the operation of section 3680A(b). In that sense, it's entirely redundant.

In my view, there's a way to interpret section 3672(b)(2)(A) without making it superfluous, consistent with the ordinary meaning of its terms and informed by context. First, the idea that Congress would allow GI Bill benefits to be used for a non-IHL program of education is consistent with the structure and scope of the statute. In fact, Congress purposely *removed* the IHL requirement when it revised GI Bill benefits. *See* Pub. Law 111-377, 124 Stat. 4106, § 105. Many provisions expressly allow veterans to use benefits for a wide range of programs unassociated with a college degree. *See, e.g.*, 38 U.S.C. § 3672(b)(2)(A)(iii) (approval of an apprenticeship program), 3672(b)(2)(B) (approval of a licensure test), 3680A(a)(3) (prohibiting approval of a course that's

24

avocational or recreational in nature "unless the veteran submits justification showing that the course will be of bona fide use in the pursuit of the veteran's present or contemplated business or occupation"). The statute's definitions of "program of education" and "educational institution" themselves contemplate using benefits at a wide range of institutions other than an IHL. 38 U.S.C. § 3452(b), (c). This isn't to say that Congress completely removed the IHL requirement. But it's evidence that Congress expanded the scope of programs eligible for GI Bill benefits. Section 3672(b)(2)(A) is one such provision that Congress enacted as part of that expansion.

Next, let's zero in on the flight training provisions specifically, starting with the basic premise that Congress legislates with knowledge of existing law. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."). Congress enacted section 3680A in 1992. Pub. L. 102–568, §313(a)(2), Oct. 29, 1992, 106 Stat. 4331. It then passed section 3672 19 years later—in 2011—at the same time it removed the blanket IHL requirement. Pub. L. 111–377, § 203(a)(1)(B), Jan. 4, 2011, 124 Stat. 4124. So we must assume that Congress was already aware that GI Bill benefits largely restricted flight training to that offered by colleges. And as explained, we assume that Congress doesn't intend to enact superfluous provisions.

We also assume that Congress knows how to use defined terms. *See O'Brien v. Wilkie*, 30 Vet.App. 21, 27-28 (2018), *aff'd*, 948 F.3d 1339 (Fed. Cir. 2020). But Congress didn't use the IHL term in section 3672(b)(2)(A). What's more, we assume that Congress knows how to cross-reference other statutes. *See id*. at 27. Section 3672(b)(2)(A) refers to section 3680A generally, which contains a host of requirements that may apply to the other provisions of section 3672(b)(2)(A). But section 3672(b)(2)(A) doesn't specifically refer to section 3680A(b)—despite referencing other specific subsections in that clause. *See* 38 U.S.C. § 3672(b)(2)(A) (referring to § 3675(b)(1) and (b)(2) specifically). Congress doesn't always provide the level of detail it did here; but when it does, that specificity matters. So we must assume that Congress was intentional in how it cross-referenced other sections and subsections so VA could implement Congress's policy. To be clear, section 3672(b)(2)(A) references all of section 3680A, which naturally includes section 3680A(b). But the majority says that the general reference to section 3680A is clear evidence that Congress intended section 3680A(b) to subsume section 3672(b)(2)(A). This oversimplifies the point of tension: Both section 3680A(b) and section 3672(b)(2)(A) contain subordinating clauses. Our task is to interpret those clauses harmoniously and according to the

25

plain text. In my judgment, the general reference to section 3680A is *not* clear evidence that Congress intended to strip section 3672(b)(2)(A) of all effect. If Congress wanted to defang section 3672(b)(2)(A) through a cross-reference, it would've specifically done so.

By its plain terms, Congress crafted section 3680A(b) to allow exceptions. Years later, Congress specifically provided section 3672(b)(2)(A)(ii). As I see it, section 3672(b)(2)(A)(ii) is a specific exception to section 3680A(b)'s requirement that a flight training course must be offered at an IHL. I read section 3672(b)(2)(A) as extending educational assistance benefits to flight training courses that have been FAA-approved and are offered at FAA-certified pilot schools, regardless of IHL affiliation. Under this interpretation, section 3672(b)(2)(A) isn't surplusage; it serves a purpose. And it's in harmony with section 3680A. It also gives effect to Congress's policy decision to enable veterans like appellant to obtain post-service training for future careers.

I would hold that Post-9/11 GI Bill benefits may extend to a flight training course offered at a private pilot school if it's approved by a state approving agency or VA and satisfies the requirements of 38 U.S.C. § 3672(b)(2)(A)(ii). I'd also set aside 38 C.F.R. § 21.4252(c)(1) as inconsistent with § 3672(b)(2)(A)(ii). So I respectfully dissent.

26